JOHN HICKS, JR. *v.* STATE OF MARYLAND
[No. 282, September Term, 1969.]

*Decided February 18, 1970.*

The cause was argued before MURPHY, C.J., and AN-
DERSON, MORTON, ORTH, and THOMPSON, JJ.

*William H. Zinman*, with whom was *John D. Hackett*
on the brief, for appellant.

*Donald Needle, Assistant Attorney General*, with whom
were *Francis B. Burch, Attorney General, Charles E.
Moylan, Jr., State's Attorney for Baltimore City*, and
*George A. Eichhorn, III, Assistant State's Attorney for
Baltimore City*, on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

John Hicks, Jr. (appellant) was found guilty by a jury
in the Criminal Court of Baltimore of three offenses,
jointly tried, of robbery with a deadly weapon. The judg-
ments are reversed.

When the indictments came on for trial, appellant was
again arraigned, entered pleas of not guilty, and prayed
a trial by jury. The court said to the Clerk, "All right.
Now, why don't you swear them in and then counsel will
approach the bench with questions, and we will continue."
The transcript of the proceedings reads: "[The prospec-
tive jury panel was sworn and questioned on their voir
dire]." It is obvious from the transcript, however, that

the jury was not then questioned on their voir dire, and we can construe it in no other way. The transcript continued immediately thereafter:

"MR. ZINMAN: (defense counsel) It is the position of the defendant that in counting the jurors, amongst I think several panels, there appears to be about six, and approximately no more than eight, Negroes on all of the collective panels. On the basis of that, and on the basis of the statistics, of statistical studies that have been taken over the past few years, it would be our contention that there may be intentional jury packing to the exclusion of Negroes and residents of the inner-city of Baltimore, and also residents who earn less than five thousand dollars a year. In addition, I would like to have the following questions propounded to the panel, number one—

THE COURT: Just before we get to that, are you making any motion?

MR. ZINMAN: I would like to make a motion to challenge the array on the ground of a disproportionate, a substantial disproportion which may really reflect prejudice either economical or racial, and economic and geographic prejudice in the selection of the jurors.

THE COURT: Is that the motion, before you ask the question?

MR. ZINMAN: Yes.

THE COURT: Motion denied.

MR. ZINMAN: I would proffer that we have statistics that indicate that less than five percent, five to ten percent of the jury of Baltimore City now, and for the last three years, have been Negroes, and that we would be prepared to prove this by statis-

tics that is taken from the point of voter registration, Negroes comprise thirty-eight percent of the voters in Baltimore City, and from the standpoint of population, over fifty-five percent, and further that a substantial proportion of jurors in Baltimore City and on this jury panel come from and reside in the suburban areas, and are substantially volunteers, and that further there are many people on this jury who are employees of the Baltimore City Transit Company, and other companies to whom the salary was paid while they also receive their payment as jurors, thereby creating a professional corps of jurors, and further that there are a substantial number of these jurors, probably over fifty percent, we would proffer, who have in fact served many times on other jurys within the last three years. That would be the basis of our challenge.

THE COURT: As I indicated, the motion is denied.

MR. ZINMAN: I would indicate that the defendant would further allege that as a result this actually deprives him of being judged by a jury of his peers and contravenes the due process and equal protection of law, as well as the Civil Rights Act.

THE COURT: All right.

MR. ZINMAN: I would like you to ask these questions, how many jurors are volunteers, and how many jurors have served previously, and if so, when within the last three years.

THE COURT: All right. The Court does not feel that these questions are pertinent, particularly in view of my denying the motion

made by defense with respect to challenging the entire array.

MR. ZINMAN: I would like to have the opportunity to call Stafford Bullen [Jury Commissioner] as a witness.

THE COURT: I have denied the motion.

MR. ZINMAN: I want to further assert, as far as Mr. Bullen is concerned, that it's our contention that the defendant — that Mr. Bullen, as a result of statistics and other evidence that we would proffer, is engaging in the practice of jury selection which is intentional race prejudice and intentional seclusion of Negroes.

THE COURT: Mr. Zinman, let me say this to you on the record. You made your motion. You have not indicated it to the Court previously to this time, and I have ruled on your motion challenging the entire panel, that I find no prejudice, and I have permitted you to proffer what you intended to show. It was not indicated to this Court prior to this time that you wanted to introduce anything.

MR. ZINMAN: Because of the unusual nature, I didn't.

THE COURT: Testimony in this respect?

MR. ZINMAN: I didn't know whether I was going to try the case, and I took a look at the jury—

(The jury is questioned on their voir dire)"

The court proceeded at that time to propound the questions as are customary in this jurisdiction in examining the jury on their voir dire and at the conclusion the jury was duly sworn and impanelled.

Section a of Maryland Rule 744 proscribes the grounds for challenge to the array:

"A party may challenge the array on the

ground that the jurors were not selected, drawn,
or summoned according to law, or for any other
ground that would disqualify the panel as a
whole."

Section b of the Rule proscribes when the challenge shall
be made:

"A challenge to the array shall be made and
determined before any individual juror from
that array is examined." [1]

We find that the challenge here was timely as made before any individual juror from the array was examined.

The challenging party has the burden of establishing, *prima facie*, grounds that would disqualify the panel as a whole. If he fails to establish a factual basis upon which to establish a *prima facie* case, his challenge falls. But once he shows, *prima facie*, grounds sufficient to disqualify the panel, the burden shifts to the opposing party to rebut the *prima facie* case. *Brooks v. State*, 3 Md. App. 485, 508-509, 510-511; *Grayson v. State*, 1 Md. App. 548, 556.

Of course, it is the constitutional right of a defendant in a criminal cause to be tried by an impartial jury. Amendment VI to the Constitution of the United States; Article 21 of the Declaration of Rights of Maryland; *Wilson v. State*, 4 Md. App. 192, 198. But the question before us is not whether the jury was impartial or whether the jurors were selected, drawn, or summoned according to law. It is rather, whether appellant was afforded a fair opportunity to establish the illegality of the panel. In the circumstances shown by the record we have no difficulty in determining that he was not. The court summarily rejected his challenge to the array when presented

---

1. Challenge to the array is distinguished from challenge of an individual juror. A party may challenge an individual juror on any ground which by law is a challenge for cause and such challenge shall be made and determined before he is sworn to try the case. However, the court for cause may permit it to be made after he is sworn but before any evidence is received. Rule 744, §§ c and d.

to it. The ruling prevailed despite appellant's attempt to show what he intended to prove with respect to the issue, his proposed questions to the jurors were not entertained by the judge "particularly in view of my denying the motion" challenging the array, and he was not permitted to call the jury commissioner as a witness on the matter even on proffer of the evidence he expected to adduce— "I have denied the motion." The court ultimately stated that it found no prejudice but we do not believe that it had before it, by reason of its own action, facts sufficient to support such a finding. We think that appellant should have been afforded the opportunity, in the circumstances, to present relevant and material factual data to establish, *prima facie,* grounds to support his challenge to the array. We find that he was denied this opportunity. We hold that such denial, here, was a violation of due process of law requiring reversal of the judgments.

In view of our holding we do not reach the other questions presented. Whether they could be meritoriously raised after retrial would depend on the evidence admitted in and the conduct of the new trial. We do note that the motion for severance was not timely as it was made after the jury was sworn. Rule 735.

*Judgments reversed; case remanded for a new trial.*