## WILKINS *v.* STATE OF MARYLAND

[No. 34, September Term, 1973.]

*Decided October 17, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, McWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Karl G. Feissner, Assigned Public Defender*, with whom were *Feissner, Kaplan, Smith, Joseph & Greenwald* on the brief, for appellant.

*James L. Bundy, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County, Eugene Muskus* and *E. Garrison Neal, Assistant State's Attorneys for Prince George's County,* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

Appellant, Ralph Edward Wilkins, after conviction by a Prince George's County jury of murder in the first degree and a sentence to life imprisonment, appealed to the Court of Special Appeals. That court affirmed in *Wilkins v. State,* 16 Md. App. 587, 300 A. 2d 411 (1973). We granted certiorari for the limited purpose of considering the contentions of Wilkins relative to jury selection.

We shall adopt, with minor editing, that portion of the opinion of Judge Scanlan for the Court of Special Appeals which pertains to this point. He said for the court:

> Prior to trial, appellant moved to challenge the jury array, contending that the exclusive use of the 1970 list of Prince George's County registered voters for the selection of jurors denied appellant due process of law and the right to be tried by a "jury of his peers." For the reasons stated, we hold that the court below properly denied appellant's motion challenging the array.
>
> In 1969, Maryland adopted a uniform and comprehensive statute governing the selection of jurors throughout the political subdivisions of the State.[1] The policy which underlies the statute is set forth in Code (1957, 1972 Repl. Vol.) Art. 51, § 1 which reads as follows:
>
> > "Whenever a litigant . . . is entitled to trial by jury, he shall have the right to a petit jury selected at random from a fair cross section of

---

[1]. *See* Chap. 408 of the Acts of 1969, now codified as Code (1957, 1972 Repl. Vol.) Art. 51, §§ 1-13 incl.

the citizens of this State resident in the county wherein the court convenes . . . . Whenever a person is accused of an indictable criminal offense . . . , he shall have the right to a grand jury selected at random from a fair cross section of the citizens of this State resident in the county wherein the court convenes . . . . All citizens of this State (1) shall have the opportunity to be considered for service on grand and petit juries in the courts of this State by maintaining their names on the roll of registered voters for State elections . . . ."

Sec. 2 also provides that:

"No citizen shall be excluded from service as a grand or petit juror in the courts of this State on account of race, color, religion, sex, national origin, or economic status."

Section 4 of the jury statute requires a written plan for random selection of jurors which will achieve the objectives of the statute and comply with its detailed provisions. In accordance with the statute, the court used the 1970 list of registered voters to select the jury. Appellant contends that this list did not represent "a fair cross section of the community," because 43%, or 165,812, of the population of Prince George's County who were over 21 years of age failed to register for the election held that year and thus could not qualify as jurors. The point thus raised is one of first impression in this Court, although it has been ruled upon elsewhere.[2]

Article 51, § 1 incorporates the constitutional requirement that a defendant "is entitled to trial by [a] jury . . . selected . . . from a fair cross section"

---

**2.** United States v. Van Allen, 208 F. Supp. 331 (S.D.N.Y. 1962), modified in part on other grounds, sub nom. United States v. Kelly, 349 F. 2d 720 (2nd Cir. 1965), cert. denied, 384 U. S. 947 (1966); and United States v. Greenberg, 200 F. Supp. 382 (S.D.N.Y. 1961).

of the community in which he is being tried. *Smith v. Texas*, 311 U. S. 128, 130 (1940). It is not necessary, of course, that the jury actually selected be representative of the community. *Thiel v. Southern Pacific Co.*, 328 U. S. 217, 220 (1946). However, it is a constitutional mandate that "the source of names of prospective jurors and the selection process be reasonably designed to produce a fair cross-section." *United States v. Guzman*, 337 F. Supp. 140, 143 (S.D. N.Y.), *aff'd*, 468 F. 2d 1245 (2d Cir. 1972), *cert. denied;* 410 U. S. 937, 93 S. Ct. 1397, 35 L.Ed.2d 602 (1973); and *United States v. Van Allen*, 208 F. Supp. 331, 334 (S.D. N.Y. 1962), *modified in part on other grounds, sub nom. United States v. Kelly*, 349 F. 2d 720 (2nd Cir. 1965), *cert. denied*, 384 U. S. 947 (1966). In *Thiel* the Supreme Court summarized the basic constitutional prerequisite to be observed in jury selection:

"The American tradition of trial by jury, . . . necessarily contemplates an impartial jury drawn from a cross-section of the community. *Smith v. Texas*, 311 U. S. 128, 130; *Glasser v. United States*, 315 U. S. 60, 85. This does not mean, of course, that every jury must contain representatives of all the economic, social, religious, racial, political and geographical groups of the community; frequently such complete representation would be impossible. But it does mean that prospective jurors shall be selected by court officials without systematic and intentional exclusion of any of these groups. Recognition must be given to the fact that those eligible for jury service are to be found in every stratum of society. Jury competence is an individual rather than a group or class matter. That fact lies at the very heart of the jury system. To disregard it is to open the door to class

distinctions and discriminations which are abhorrent to the democratic ideals of trial by jury." *Id.* at 220.

Thus, the crux of the inquiry raised by the appellant's challenge to the array is whether use of the voter registration list produced a "systematic or intentional exclusion of any cognizable group or class of qualified citizens." *United States v. Guzman, supra* at 143. Art. 51, § 2 identifies six classes or groups which cannot be discriminated against in the jury selection process. However, the appellant would go further. He maintains that otherwise qualified voters who failed to register to vote constitute a definite group or class who have been unlawfully excluded from service as jurors.

The State argues, with considerable persuasion, that the constitutionality of using registered voters lists has been approved, impliedly at least, by the Supreme Court. In *Brown v. Allen*, 344 U. S. 443, 474 (1953), the Court approved the use of property tax lists. Voter registration lists are more encompassing than property tax lists. The less affluent, members of racial and ethnic minorities, and young people appear in proportionately greater numbers on a voters list. In addition, the Supreme Court's decision in *Brown* arose in a context of racial discrimination, an area where the Court has been especially vigilant in protecting against discriminatory stratagems designed to exclude Negroes from jury duty. *Smith v. Texas, supra; Patton v. Mississippi*, 332 U. S. 463 (1947). We could, therefore, base our holding in this case on the precedent furnished by the *Brown* decision. However, the precise issue raised by the appellant is a novel one and not passed upon in the *Brown* case. Accordingly, we move beyond the limited light shed by *Brown* to deal directly with the precise, but different, factual issue presented by the appellant's

challenge to the array in this case. That question is: Were the otherwise eligible voters of Prince George's County who failed to register for the 1970 election a cognizable or identifiable group or class for purposes of jury selection? If they constitute such a definitive class, use of the 1970 registered voters list systematically, if not intentionally, excluded the class from jury service. If the nonregistered voters were not a "cognizable" class, then their exclusion from jury service offended no constitutional or statutory right possessed by the appellant.

For a group to be "cognizable," the group must have a definite composition. As Judge Metzner recently spelled it out:

". . . That is, there must be some factor which defines and limits the group. A cognizable group is not one whose membership shifts from day to day or whose members can be arbitrarily selected. Secondly, the group must have cohesion. There must be a common thread which runs through the group, a basic similarity in attitudes or ideas or experience which is present in members of the group and which cannot be adequately represented if the group is excluded from the jury selection process. Finally, there must be a possibility that exclusion of the group will result in partiality or bias on the part of juries hearing cases in which group members are involved. That is, the group must have a community of interest which cannot be adequately protected by the rest of the populace." *United States v. Guzman, supra* at 143-44.

The appellant produced the census statistics as to the total population of Prince George's County in 1970 and compared these figures with the number of registered voters. However, he made no effort to

demonstrate that persons, otherwise qualified, who failed to register for the 1970 election constituted a group or class of persons who showed a basic similarity "in attitudes or ideas or experience" which could not have been adequately represented in view of the exclusion of the class from the jury selection process and that the exclusion of the class resulted in partiality or bias on the part of the juries which were selected through exclusive use of the 1970 registered voters list.

In the absence of proof, the appellant, in effect, is asking that the Court declare as a matter of law that nonregistered voters constitute a cognizable group of persons in the community. This would be an abuse of our appellate functions. Moreover, in two cases where the precise issue has been decided and in which the parties challenging the array produced economic, racial, sociological, demographic and educational statistics, findings and analysis in attempting to establish the cognizable nature of the group of nonregistrants, the courts held that nonregistered voters did not represent a cognizable group and that the use of voter registration lists was a permissible method of jury selection. Thus, in *United States v. Greenberg, supra* at 391, Judge Bryan said:

"He characterizes this group as 'the politically dormant' and says that their common failure to vote is a cohesive factor which binds all of them together in a community of interest. There is no merit to this contention. . . . *All that such persons have in common is their failure to exercise the right of franchise at a given election. They are united only in disinterest.*" (Emphasis added.)

*Greenberg* was followed by *United States v. Van Allen, supra* at 335-36, where Judge Cashin stated:

"It cannot be said that non-registrants

represent a certain or cognizable group of persons. Non-registrants vary from election to election . . . . It is undisputed that in New York registration is available to all qualified persons, with strict legal prohibition against discrimination based upon race, sex, religion, national origin, or wealth. Thus, the use of registration lists to select jurors actually guarantees the presence of these groups on the jury list."

We find that both the rationale and the rulings in the *Greenberg* and *Van Allen* decisions are persuasive. Neither the Constitution, nor the requirements of common sense, demand a scientifically perfect system for producing a representative cross section of the community. Nor has such a system been devised. Meanwhile, arguments "can be made against the use of any lists, as none are available for the whole population." *United States v. Local 36 of International Fishermen*, 70 F. Supp. 782, 799 (S.D. Cal. 1947), *aff'd*, 177 F. 2d 320 (9th Cir. 1949), *cert. denied*, 339 U. S. 947 (1950). Under existing realities, as Mr. Justice Holmes once put it in another context: "There must be a limit to . . . such matters if government is to go on." *Bi-Metallic Investment Co. v. State Board of Equalization of Colorado*, 239 U. S. 441, 445 (1915). All that is required is a method reasonably designed to produce a jury representative of a cross section of the community. The objective selection of names at random from registration lists as provided for by Article 51 "fully satisfies this requirement and commends itself to an impartial jury system." *United States v. Greenberg, supra* at 391.

*Judgment affirmed.*