## STATE OF MARYLAND *v.* LESLEY LATTISAW and ARTHUR JAMES KEELING

[No. 883, September Term, 1980.]

*Decided March 3, 1981.*

The cause was argued before WILNER and MACDANIEL, JJ., and CHARLES E. ORTH, JR., Associate Judge of the Court of Appeals (retired), specially assigned.

*Stephen Rosenbaum, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Thomas A. Blair, Assistant State's Attorney for Prince George's County,* on the brief, for appellant.

*George E. Burns, Jr., Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellee.

WILNER, J., delivered the opinion of the Court.

The State appeals an order of the Circuit Court for Prince George's County dismissing indictments against appellees Lesley Lattisaw and Arthur Keeling. The circuit court took that action because, in contravention of Maryland Rule 746a, those appellees were not brought to trial within 180 days after the first appearance of counsel on their behalf. The issue before us is not whether there was a violation of the 180-day requirement — that is conceded — but rather whether, under the circumstances evident in this record, dismissal of the indictments was an appropriate sanction. We think not and shall therefore reverse.

On November 21, 1979, the Grand Jury returned a seven-count indictment charging Craig Brooks, Warren Anderson, Lesley Lattisaw, and Arthur Keeling with the armed robbery of William Summers and with various associated and lesser included offenses arising from that incident. Anderson, who was apparently a juvenile, promptly (on November 23) moved to transfer his case to the juvenile court. *See* Md. Ann. Code art. 27, § 594A. Counsel entered their appearance for the remaining three defendants on

December 5, 1979 (Darlene Perry, Public Defender, for Lattisaw), December 6, 1979 (Leonard Casalino, retained counsel, for Keeling), and December 13, 1979 (Beverly Stone, for Brooks). In each case, pleas of not guilty and elections of a jury trial were filed.

Following these appearances, matters proceeded apace, with normal discovery motions, motions to suppress, motions to reduce bail bonds. On January 10, 1980, Brooks moved for a severance of his case; that motion was answered on January 28. On February 20, 1980, following a social service investigation, Anderson's motion for transfer to the juvenile court was granted, which left, at that time, three co-defendants. On March 6, Keeling moved for a severance of his case. On March 11, 1980, the court granted Brooks' motion for severance and set his trial for May 27, 1980, but it reserved ruling on Keeling's motion until the day of trial. Trial of Lattisaw and Keeling had earlier been set, by agreement of counsel, for June 9, 1980. Unfortunately, the 180-day period prescribed under Maryland Rule 746 would expire on June 2 for Lattisaw and on June 3 for Keeling.

Lattisaw and Keeling appeared for trial on the appointed day. No motions to dismiss based upon Maryland Rule 746 had been filed at that point. The case was not reached that day, and it was reset for the next day — June 10; but it appears that at some point on June 9, Judge Chasanow gratuitously observed that more than 180 days had elapsed since the first appearance of counsel, and bells went off in the heads of defense counsel. As the first order of business the next day, they moved to dismiss the indictments against their clients based upon the rules laid down in *State v. Hicks,* 285 Md. 310 (1979).

The State defended these motions on the ground that, by consenting to the trial date of June 9, appellees, through their counsel, were in part responsible for the violation of the Rule. A precise theory was not clearly articulated. At one point, the State's Attorney seemed to apply the Constitutional balancing test, allocating certain periods of time to the State and other periods to the defense;

intermingled with this were suggestions of waiver or the existence of "good cause" for the violation of the requirement. Underlying all of these approaches, however, was the agreement of defense counsel to the June 9 date.

After hearing some argument, the court took testimony on the issue. Betty Perrie, supervisor of the criminal assignment office, explained the difficulty in multi-defendant cases in getting an acceptable trial date. Sometimes, she said, it takes as many as eight to ten phone calls back and forth. There was a particular problem, she said, with respect to counsel for Lattisaw, not for any inappropriate reason but simply because she has an extremely busy trial schedule. Patricia Armstrong, the assignment clerk who handled the actual scheduling of this case, also testified. She said that she waited until Anderson's transfer motion was resolved before attempting to arrange a trial date in order to avoid having to deal with four separate defense counsel. This is what delayed the commencement of her efforts from December to early March.

Sometime in March, Ms. Armstrong began calling the attorneys. She testified:

"Q  Do you recall any specific difficulties you had in setting this case with respect to defendants Lattisaw and Keeling?

A  Yes.

Q  What was that difficulty?

A  First of all, it is very hard to get Darlene Perry and Len Casalino together because they are so backed up. This was just the earliest available date I could get for both of them.

Q  Approximately how many phone calls did it take you back and forth to select the June 9 date?

A  I really can't remember, but probably about three.

Q   Did you propose any tentative dates to either Darlene Perry and Len Casalino?

A   I am sure I did." [1]

Ms. Armstrong indicated that the earliest trial date agreeable to both remaining defense counsel was June 9, and, as a result, that was the date she picked. She did not advise counsel that June 9 was beyond the 180-day period, although she probably knew that it was so. Her testimony in that regard, on cross-examination by counsel for Lattisaw, was as follows:

"Q   Did you ever compute it on the card that the final date, under the Hicks rule, was June 2 or 3?

A   No, but we know from the appearance date, when the 180 days runs.

Q   So you had full knowledge that, originally when this case was set in for June 9, it was beyond the Hicks rule?

A   Yes, but I had such a hard time setting the case in. I am sure I did have knowledge of it.

Q   Why didn't you bring it to the attention of anyone?

A   Well, I don't know.

Q   Why didn't you tell the attorneys, hey, I can't put it in that date?

A   *Well, you agreed with it.*

Q   I understand. Why didn't you tell any of the attorneys?

A   Well, when I am setting up the case, I don't — I think of the 180 days, but I am going back and forth trying to get these dates in with all of these

---

1. Perry and Casalino denied that Armstrong had proposed any earlier dates.

attorneys, and somehow I probably, it probably just slipped my mind." (Emphasis supplied.)

Based upon counsel's agreement, Ms. Armstrong sent written notices of the June 9 trial to both appellees and their counsel. The record indicates that the notices were typed on March 7 and were sent out on the 11th. At no time did either appellee (or counsel) object to the June 9 date, before or after it was set. The evidence showed that the State was prepared to try the cases within the 180-day period. The problem was solely one of obtaining a date agreeable to defense counsel.

Counsel for Lattisaw, Ms. Perry, conceded that she had agreed to the June 9 date, but claimed that she was unaware at the time that the 180-day period would expire before then. Significantly, she did not indicate that her schedule would have permitted any earlier trial date based upon a March 10 notice. She apparently was "booked up" 90 days in advance, and criticized the assignment office for not commencing its efforts in December. Had it done so, she could have been available within the 180 days. The relevant part of her testimony was as follows:

"Q  But between December 5, 1979, when you filed your request for speedy trial, and yesterday, when the case was scheduled, you hadn't done anything or filed any pleadings to cause the case to be tried earlier, had you?

A  No, other than to try to get discovery.

Q  On March 10, when you were contacted by the assignment office, or March 11, when you returned the call, *you agreed to the June 9 date?*

A  *Yes.*

Q  Did you mention to them you wanted an earlier trial date?

A  By the time she called me, my calendar was full for the next, at least, 90 days.

Q  If you were called on March 10 or March 11, and the case was set on June 9, that was approximately 90 days?

A   Yes.   If she had called me earlier than that, it would have been worked in, yes.

Q   During the 30 days following the entry of your appearance, did you make any protest concerning the fact the assignment office had not set this case for trial?

A   No." (Emphasis supplied.)

Counsel for Keeling, Mr. Casalino, also recalled the conversation with Ms. Armstrong, but in a somewhat different way. He said that he had called Ms. Armstrong in early March to inquire about a trial date and was told that none had yet been scheduled:

"I indicated to her that she could contact me with reference to clearing certain dates, or we could do it now. She never proposed any trial dates. She never indicated to me any unusual circumstances other than there were other attorneys she had to contact, but she did assure me she would be calling me back.

"I did receive a call back approximately a week or maybe a little bit later, which she first mentioned to me the date of, I believe, June 9, and it wasn't by way of discussion. She said June 9 seems to be a clear date, do you have anything scheduled? I said, I don't have anything for the month of June, at this time, maybe one or two things, it is clear on my calendar. . . ."

He acknowledged receipt of the written notice following his conversation and conceded that he never thought to calculate whether there was a problem under Rule 746. He summarized:

"As we went along, again, the June 9 trial date was set in, briefly, as far as I am concerned, only when Ms. Armstrong called me back and said, 'It appears that June 9 is a clear date for everyone. What does your calendar look like'? *Mine was fine. I said, 'Fine, set it in,' and it was set in.* Mr. Keeling never consented, in any way, shape or form, to a delay beyond the date required, or at least, the time

period that we know to be found in the rules. As a practical matter, it wasn't considered until, and I am being candid with the court, until over the weekend." (Emphasis supplied.)

The court concluded from all of this that (1) Casalino had never expressly consented to the June 9 trial date, but had merely indicated that his calendar was clear that day, and (2) although Perry had consented to the June 9 date, it was not an effective consent because she was not aware at the time that such date was beyond the mandatory period. In effect, the court applied the Constitutional waiver test to the actions of counsel, holding that a waiver of the 180-day requirement had to be a knowing and intelligent one which could not exist where counsel (and their clients) were unaware that the period would expire before June 9. This is also the position taken by appellees in defending the court's action.

We think that the court, in all good faith, gave too limited a reading to what the Court of Appeals said in *State v. Hicks;* and, as a result, it gave an interpretation to Rule 746a that is unnecessary and incorrect.

Although the dissent in *Hicks* viewed the requirements of Rule 746a primarily from the perspective of the defendant — as an extension of his Constitutional right to a speedy trial — the majority looked upon it more from a societal point of view, as a device to alleviate the problems caused to the criminal justice system by delays in initially scheduling cases for trial and by the inappropriate postponing of scheduled trial dates. *See* the discussion at pp. 316-318 of 285 Md. Both aspects are, of course, important; the point we make is that the Rule was not intended solely to confer new rights upon defendants, but also to hold their feet to the fire. As the Constitutional balancing test under *Barker v. Wingo,* 407 U.S. 514 (1972), implies, and as this very case so clearly indicates, delays in trial are not always and exclusively attributable to prosecutorial laxity. The problem (or part of the problem) is often picking a date suitable to the defense; and that problem obviously increases in complexity when there are multiple defendants.

That aspect of the problem was recognized by the Court of Appeals in its *per curiam* Opinion on the State's motion for reconsideration in *Hicks. See* 285 Md. 334. It set forth two circumstances under which dismissal of the indictment was regarded as an inappropriate sanction for noncompliance with the mandatory requirement. The second of these, said the Court at p. 335,

> "is where the defendant, either individually or by his attorney, *seeks or expressly consents* to a trial date in violation of Rule 746. It would, in our judgment, be entirely inappropriate for the defendant to gain advantage from a violation of the rule *when he was a party to that violation."* (Emphasis supplied.)

The court below, and appellees here, seize upon the term "expressly consents," and most particularly upon the adverb "expressly," as somehow implying or embodying the requirement that the consenter understand that the date he consents to is outside the 180-day period. That is not what the Court of Appeals said, however; and we do not think that is what it meant.

Defense counsel presumably can count to 180 as well as prosecutors; they know when they entered their appearances — when the clock began to tick — and they can figure out when the time under the Rule expires. These were not inexperienced counsel; according to the record, both attorneys had extensive background in the trial of criminal cases and were well aware of both the Rule and the interpretation given to it in *Hicks.* They both agreed to the June 9 date because it was convenient to them and, in the absence of any contrary indication, we assume was acceptable to their clients.[2] It is not necessary for the clerk in the criminal

---

2. Respectful as we are, and must be, of the conclusions of fact and law reached by the trial court (*see* Maryland Rule 1086), we simply cannot accept the proposition that Mr. Casalino's response to Ms. Armstrong did not amount, in fact or in law, to an express consent to the June 9 trial date. Ms. Armstrong was not calling out of idle curiosity as to Casalino's June work schedule, but to arrange a specific trial date for this case. It is the height of sophistry to suggest, in that context, that Casalino's response that his calendar was clear on June 9 did not amount to a consent to that date. This is especially so in light of his ensuing statement, "Fine, set it in." No protest was made either during the conversation with Ms. Armstrong or after

assignment office to inform defense counsel with each telephone call of that which it is their job to know. Nor does it detract in the least from the reality of their consent to a particular trial date, or from the "expressness" of it, that they may be unaware that the date to which they agree is, in fact, beyond the 180-day period. To require dismissal of an indictment in such a case would be tantamount to doing precisely what the Court said was inappropriate — permitting "the defendant to gain advantage from a violation of the rule when he [through counsel] was a party to that violation."

We are not unaware of the recent decision in *Logan and Banks v. State,* 289 Md. 460, 425 A.2d 632 (1981), in which the Court of Appeals concluded that a waiver of the right of prompt presentment before a district court commissioner, to be effective, had to be knowing and intelligent, *i.e.,* a so-called *Johnson v. Zerbst* waiver. We see a significant distinction, however. The rights accorded by MDR 723 are personal to the accused and can only be waived by him. They are solely for his benefit and have no significant function other than to preserve underlying Constitutional rights that are also personal to him and can only be waived by him. As *Hicks* makes clear, the 180-day requirement is not entirely for the accused's benefit, and can be waived *by counsel.* We are not aware of any analogous situation in which the *Johnson v. Zerbst* criterion has been applied to tactical decisions made by counsel, especially when those decisions are made as much for his convenience as for that of his client.

> *Judgments dismissing indictments reversed; cases remanded to Circuit Court for Prince George's County for further proceedings; appellees to pay the costs.*

receipt of the written notice about the June 9 date. Indeed, it seems apparent that he had no problem with that date until he was apprised by Judge Chasanow that the 180 days had already lapsed.