# TERRY W. MILLER v. STATE OF MARYLAND

[No. 274, September Term, 1982.]

*Decided November 5, 1982.*

2

The cause was argued before MOORE, LISS and ALPERT, JJ.

*Joseph H. Rouse, Assigned Public Defender,* for appellant.

*Alexander L. Cummings, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *James S. Salkin, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

LISS, J., delivered the opinion of the Court.

Appellant, Terry W. Miller, was charged by indictments on November 20, 1980, in the Criminal Court of Baltimore with robbery with a deadly weapon and related counts, kidnapping and a related count, attempted sex offense in the first degree and related counts, sex offense in the first degree and related counts and rape in the first degree and related counts. All of the charges involved an incident which occurred on October 28, 1980. Trial before a jury began on June 16, 1981, and on June 19, the jury returned verdicts of guilty of rape in the first degree, robbery with a deadly weapon, kidnapping and attempted sexual offense in the first degree. Sentences were imposed and appellant filed a motion for new trial which was denied. Appellant then filed this appeal, raising the three following issues:

(1) Was the trial judge in error when he refused to grant the appellant's motion for a new trial on the ground that he had been denied his right to a trial by an impartial jury when the evidence clearly disclosed that young adults had been systematically excluded from the jury panel?

(2) Did the trial judge err in refusing to dismiss the indictments against the appellant since the appellant was not tried within one hundred eighty (180) days of the first appearance of his attorney as mandated by Rule 746?

(3) Did the trial judge err when he allowed a witness to testify after the name of the witness had not been furnished to the appellant as required by Rule 741?

(2)

We shall consider the issues out of sequence because such a procedure will result in a more orderly disposition of the questions raised by this appeal. The denial of appellant's motion to dismiss for lack of a speedy trial is, we believe, an appropriate beginning point for our consideration of this case. The chart below sets forth the relevant dates and events to be considered on the motion to dismiss.

Date

| November 6, 1980 | Appellant arrested. |
| November 20, 1980 | Indictment filed. |
| December 11, 1980 | Appearance of defense counsel; appellant arraigned. |
| March 9, 1981 | Scheduled trial date.<br>Case placed on move list. |
| March 10, 1981 | Trial postponed because a court was not available. |
| March 18, 1981 | Hearing before Judge Karwacki in the presence of appellant and his counsel; trial administratively postponed. June 8, 1981 assigned as trial date. |
| June 8, 1981 | Case not reached, and placed on move list. |
| June 9, 1981 | Hearing on motion to dismiss for lack of speedy trial. |

4

Maryland Rule 746 provides as follows:

a. *General Provision.*

Within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the court pursuant to Rule 723, a trial date shall be set which shall be not later than 180 days after the appearance or waiver of counsel or after the appearance of defendant before the court pursuant to Rule 723.

b. *Change of Trial Date.*

Upon motion of a party made in writing or in open court and for good cause shown, the county administrative judge or a judge designated by him may grant a change of trial date.

In *State v. Hicks,* 285 Md. 310, 403 A.2d 356 (1979), the Court of Appeals held that the 120 [180] day trial date requirement of Rule 746 was mandatory and absent extraordinary [good] cause, "dismissal of the criminal charges is the appropriate sanction." [1] 285 Md. at 318. Appellant claims that he was not tried within the 180 days as required by Rule 746 and since good cause for the failure was not shown, all of the charges against him should have been dismissed. He further contends that if June 9, 1981 (the date of the hearing on the motion to dismiss), is considered as the trial date, he was not brought to trial until 181 days after the appearance of counsel. We do not reach the same result in our computation of the time involved. We find appellant was brought to trial on the 180th day after the appearance of counsel on December 11, 1980. Apparently, appellant counted the first day of the appearance of counsel as the initial date for the beginning of the tolling of the expiration of the mandated time. Maryland Rule 8, however, excludes that date from the time period. The rule provides:

---

1. On November 16, 1979, Rule 746 a was amended, substituting "180" for "120" days. On July 3, 1980, by amendment, "good cause" was substituted for "extraordinary cause" in section b. As appellant first appeared subsequent to July 3, 1980, the less stringent "good cause" standard applies in this case.

> In computing any period of time prescribed by these Rules or order of a court, or by any applicable statute, the day of the act, event, or default, after which the designated period of time begins to run is not to be included.

When the case was called for trial on June 9, 1981, there were a number of pre-trial motions which remained to be ruled upon. No motion to dismiss for lack of a speedy trial had been filed under Maryland Rule 746. The trial judge then heard arguments on appellant's oral motion to dismiss for lack of a speedy trial, which was offered for the first time at the pre-trial hearing. The record indicates that the following factual information was adduced at the hearing. The appellant was arrested on November 6, 1980. The case was first scheduled for trial on March 9, 1981. Both the defense and the State were ready for trial on that date. Witnesses had been summoned and were available. It then developed that no court was available for trial. A hearing was held before Judge Karwacki, the Administrative Judge of the Supreme Bench, and *appellant's counsel* requested that the case be placed on the "move list." This procedure is often utilized when cases scheduled for trial are not reached because of the overcrowded dockets. The cases are assigned to a waiting list or "move list", and as courts become available the next case on the "move list" is assigned to a specific court and judge for trial. Cases on the "move list" receive priority over other regularly scheduled cases assigned for trial in the numerous criminal courts now operating in Baltimore City.

The case was assigned to the "move list" but several days later Judge Karwacki postponed the case to June 8, 1981, which was within the 180 day period mandated by the *Hicks* rule. On March 18, the Administrative Judge held a hearing in chambers at which the prosecutor, appellant and his counsel were present. He ruled from the bench that because of the magnitude of the "move list", and the impossibility of keeping all witnesses waiting for weeks, perhaps months, to get this case to trial, in his opinion the record demonstrated

"extraordinary cause" to justify a postponement of the June 8th trial date. No objection to this ruling was made by either party. Under these circumstances, we conclude that the postponement was justified by "good cause" and that our decision in *State v. Lattisaw,* 48 Md. App. 20, 425 A.2d 1051, *cert. denied,* 290 Md. 717 (1981), is controlling. In *Lattisaw,* we held that where a defendant consents to a trial date beyond the 180 day expiration of limitations, he waives his rights to the sanctions imposed by the *Hicks* rule. In the instant case, appellant's failure to object to the postponement amounts to a waiver of the 180 day limitation and we find no error in the trial court's denial of the motion to dismiss at the time of the pre-trial hearing.

Appellant lastly complains on this issue that the actual trial did not begin until June 15, 1981, some six or seven days after the expiration of the 180 day limitation period. The record again fails to reveal any objection prior to or during the actual trial.

The record discloses that immediately after the disposition of the pre-trial motions the case was placed on the fourth position on the "move list" and in its regular progression was reached for trial on June 15, 1981. No objection was made to the placement of the case on the "move list." If the appellant had an objection to this procedure, he should have so noted at that time so that at least an opportunity for corrective action might have been made available to the court. In the absence of such an objection, we consider the complaint waived. *See State v. Lattisaw, supra.*

(1)

Appellant contends that the trial judge erred when he refused to grant appellant's motion for a new trial on the ground that he had been denied his right to trial by an impartial jury. He urges that the evidence offered in support of the motion established that young adults were systematically excluded from the jury panel in violation of his right to a trial by jury as guaranteed by the United States and Maryland constitutions.

Maryland Rule 754 a states: [2]

a. *To the Array.*

A party may challenge the array on the ground that jurors were not selected, drawn, or summoned according to law, or for any other ground that would disqualify the panel as a whole. A challenge to the array shall be made and determined before any individual juror from that array is examined, but the court for good cause shown may permit it to be made after the jury is sworn but before any evidence is received.

Appellant suggests that he moved to strike the entire panel after *voir dire* had commenced but concedes that he did not challenge the array either before individual jurors were examined or after the jury was sworn but before evidence was received. It seems clear to us that appellant failed to comply with Rule 754 a and the State contends that this precludes the raising of the issue in this appeal. The appellant urges us to find that the trial court erred when it refused to grant a new trial on the basis that appellant failed to preserve this issue. As an excuse for appellant's failure to comply with Rule 754 a, appellant contends that the law requires an objecting defendant to prove a systematic exclusion of individuals belonging to a cognizable group in order to successfully challenge the array. Appellant states that there was no "meaningful opportunity to challenge" until after the jury had been sworn, had heard the evidence and had returned its verdicts. We do not agree. Appellant apparently wishes the courts to provide him with the best of all possible worlds in the trial of the charges against him. If he is successful in convincing the jury, as constituted, of his innocence then obviously he has no complaint against the array; however, if, after having thrown the dice, he is faced with a conviction, he seeks to require the trial court to deter-

---

2. Former Rule 744 b was stricter concerning the time for challenging the array because it only permitted such challenge to be made before any individual juror from the array had been examined. A failure to timely challenge the array barred appellate review under 744 b. Douglas v. State, 9 Md. App. 647, 267 A.2d 291 (1970).

mine the issue of improper jury exclusion which could have and should have been raised before the trial began. As support for this second roll of the dice he offers the case of *State v. Devers and Webster,* 260 Md. 360, 272 A.2d 794, *cert. denied,* 404 U.S. 824, 92 S.Ct. 50, 30 L.Ed.2d 52 (1971), in which the Court of Appeals quoted Hochheimer, *The Law of Crimes and Criminal Procedure,* 184 at 209-210 (2d Ed. 1904) for the proposition that:

> The principal grounds for granting a new trial are, that the verdict was contrary to the evidence; newly discovered evidence; accident and surprise; misconduct of jurors or the officer having them in charge; bias and disqualification of jurors (disqualification not entitling to a new trial, however, if there was opportunity to challenge); misconduct or error of the judge; fraud or misconduct of the prosecution, *e.g.,* abuse of argument.[3]

An examination of the record does not substantiate appellant's argument that he had no "meaningful opportunity" to challenge the jury array before the trial began. The factual background as to the manner of selection of the list of 350 prospective jurors selected from a master list of registered voters in Baltimore City was as available before trial as it was after conviction. The information concerning the names, ages and the distribution of ages was also available. The table compiled by the Bureau of Biostatistics of the Baltimore City Health Department could have been prepared and submitted as part of a proper timely challenge under Rule 754 a. Appellant's expert witness, George R. Ray, a computer specialist who testified as to the method of jury selection in Baltimore City, was available before the trial began. Furthermore, the expert witness offered as a sociologist to establish younger and older adults as cognizable groups within our society was available before the

---

3. A careful analysis of this quotation, however, indicates that when *Devers* refers to the disqualification of jurors it is referring to a challenge of individual jurors, not a challenge to the array which was the subject of the motion for a new trial in this case.

motion for a new trial. Whatever objection the appellant may have had to the array was obvious to the appellant when the array of jurors first appeared in the courtroom. A timely challenge at that point might well have resulted in the trial judge calling for a new array which could have resolved the complaint. If the court had refused the challenge, appellant could have moved for a continuance to investigate the composition of the array. It was never contemplated under the rules that a defendant could reserve the issue until after trial and verdict and then have the issue decided by motion for a new trial. As we conclude that appellant waived his rights under Rule 754 a, we would not normally consider the merits of this case. It is apparent to us, however, that the same issue has been raised by the Public Defender's Office in several cases now pending in this Court and in the interest of judicial economy we feel that a disposition of this issue may obviate the need of consideration of the matter in future cases.

It is presumed, absent evidence to the contrary, that a jury selection process is constitutionally proper. *In Schowgurow v. State,* 240 Md. 121, 213 A.2d 475 (1965), it was presumed that prospective jurors had been required to affirm their belief in the existence of God because this was then required by the Maryland Constitution. The court noted that there is a strong presumption that judges and court clerks, like other public officers, properly perform their duties. A party challenging a jury array has the burden of establishing, *prima facie,* grounds that would disqualify the panel as a whole. If he fails to establish a factual basis upon which to show a *prima facie* case, his challenge fails. But once he shows, *prima facie,* grounds sufficient to disqualify the panel, the burden shifts to the opposing party to rebut the *prima facie* case. *See Hicks v. State,* 9 Md. App. 25, 262 A.2d 66 (1970).

Maryland Code (1974, 1980 Repl. Vol.) Courts and Judicial Proceedings Article, §§ 8-201 through 8-208, implements the constitutional requirement that a defendant is entitled to a trial by a jury to be selected from a fair cross-section of the community in which he is being tried. It

is not necessary, of course, that the jury actually selected be representative of the community. *Wilkins v. State,* 16 Md. App. 587, 300 A.2d 411, *aff'd,* 270 Md. 62, 310 A.2d 39 (1973), *cert. denied,* 415 U.S. 992, 94 S.Ct. 1592, 39 L.Ed.2d 889 (1974). However, it is a constitutional mandate that the source of names of prospective jurors and the selection process be reasonably designed to procure a fair cross-section. 16 Md. App. at 593. In order to show that the jury selection process was unconstitutional the challenging party must show: (1) that a cognizable group or class of qualified citizens was excluded; and (2) the exclusion was systematic and intentional. *Wilkins v. State, supra* at 593; *Hopkins v. State,* 19 Md. App. 414, 311 A.2d 483 (1973).

Appellant argues that persons in their twenties, thirties, and early forties were nearly all systematically excluded from the sixty member array produced from which to select the jury. The first question to be decided is whether these persons constitute a "cognizable group." We said in *Hopkins, supra* at p. 421-22:

In order for a group to be "cognizable" it must be shown that the particular group has a definite composition and that the membership does not shift from day to day. The group must have cohesion. "There must be a common thread which runs through the group, a basic similarity in attitudes or ideas or experience which is present in members of the group and which cannot be adequately represented if the group is excluded from the jury selection process." *United States v. Guzman,* [337 F. Supp. 140, 143 (S.D.N.Y. 1972), *aff'd* 468 F.2d 1245 (2d Cir. 1972)]; *Wilkins v. State, supra* at 595. Moreover, the possibility must exist that the exclusion of the group from jury service will result in bias, partiality or prejudice being practiced against members of the group by juries hearing cases in which members of the group are involved. *United States v. Guzman, supra* at 143-146; *United States v. Greenberg,* 200 F. Supp. 382, 391 (S.D.N.Y. 1961).

At the hearing of the motion for a new trial appellant produced Doctor Joyce Epstein, a member of the Social Relations Department of Johns Hopkins University, who testified that "young adults" in their twenties and thirties are a cognizable group bearing different perspectives and having different characteristics than persons falling within older age groups. She opined that a jury which excludes young adults would not comprise a fair cross-section of society. The trial judge, in the course of the exercise of his fact finding function at the motion for a new trial, found this testimony "not particularly persuasive because of the constant influx of young people." The testimony of Doctor Epstein failed to present any evidence of specific attitudes, ideas or experience which are common to members of this age group and different from those of older adults.

In effect, appellant has attempted to turn what is essentially a legal issue into a factual one. He relies on *United States v. Butera,* 420 F.2d 564 (1st Cir. 1970), where the court held that an age group between 21 and 34 was cognizable. *Butera,* however, stands alone and was criticized in two other federal circuits. *See United States v. Potter,* 552 F.2d 901 (9th Cir. 1977), where young people 18-34 were held not cognizable; and *United States v. Test,* 550 F.2d 577 (10th Cir. 1976), holding that persons under forty are not cognizable. *See also United States v. Gast,* 457 F.2d 141 (7th Cir. 1972), *cert. denied,* 406 U.S. 969, 92 S.Ct. 2426, 32 L.Ed.2d 668 (1972) (18-26 not cognizable); *United States v. DiTommaso,* 405 F.2d 385 (4th Cir. 1968), *cert. denied,* 394 U.S. 934, 89 S.Ct. 1209, 22 L.Ed.2d 465 (1969) (21-29 not cognizable); *United States v. Leonetti,* 291 F. Supp. 461 (S.D.N.Y. 1968) (24-40 not cognizable); *United States v. Bryant,* 291 F. Supp. 542 (D.Me. 1968) (21-29 not cognizable); *United States v. Cohen,* 275 F. Supp. 724 (D.Md. 1967) (21-30 not cognizable). On the basis of the authorities here cited we conclude that the appellant has failed to establish that the "young adult" (twenty to forty) group is cognizable under law.

Furthermore, we conclude that the appellant has failed to establish a *prima facie* case of *systematic exclusion* of young

adults. Appellant has drawn his conclusions by comparing the array in this case with the city's general population. However, the jurors were not selected from the city's general population. Instead, as required by statute, the jury was drawn from the city's list of registered voters. Additionally, appellant has compared one panel of sixty persons to a population group of 400,000 registered voters and has attempted to make a valid statistical analysis on the basis of these numbers. This is manifestly improper. The Supreme Court has required that improper representation must be proven over a *significant period of time* in order to establish a *prima facie* case of unlawful discrimination. *Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1972). *See also Rose v. Mitchell,* 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979). We have carefully considered the testimony of Ernestine Karukas, the jury commissioner. She gave a detailed explanation of the method of selection of the array in this case and we agree with the conclusions of the trial judge who stated as a basis for his denial of appellant's motion for a new trial:

> I think it's clear from the evidence before me that the numbers are randomly drawn and the drawing of the low numbers in the cases of the defendants' jury panels were the result, as I see it, as nothing but the luck of the draw and clearly the exclusion of young adults from the jury, it would seem to me to be characterized to isolated occurrences, depending on the luck of the draw.
>
> I therefore find that the selection process utilized in the defendants' cases did not systematically exclude younger jurors.

### (3)

Finally, appellant urges that the trial judge committed reversible error when he permitted the State to call one William Sprinkle as a witness, even though his name had not been disclosed in the discovery process.

Maryland Rule 741 b 1 requires that the State in a criminal case shall disclose the name and address of each person,

then known, whom the State intends to call at the hearing or trial to prove its case in chief. Appellant filed a motion for discovery and the State answered the motion on two occasions. On neither occasion was the name of William Sprinkle disclosed as a State witness. In its case in chief, the State called Sprinkle as its final witness. Defense counsel objected on the ground that the witness had not been listed in the State's discovery answers.

The State concedes that it failed to furnish the requested discovery within 10 days after the receipt of the request as required by Rule 741 e 1. However, it contends that under the circumstances in this case the trial court was not necessarily required to exclude Sprinkle's testimony. Rule 741 g provides several alternative methods for the trial judge to deal with a violation of the Rule. It provides that the trial judge may

> ... strike the testimony to which the undisclosed matter relates, grant a reasonable continuance, prohibit the party from introducing in evidence the matter not disclosed, grant a mistrial, or enter any other order appropriate under the circumstances.

In this case the court declared a recess in order to give defense counsel an opportunity to talk to the witness before he testified. The court stated, "If you have any problems when you talk to him bring them before the court." After the recess, defense counsel never called to the attention of the court any problems with the witness, nor did the defense suggest the necessity for the implementation of any of the remedies available to the court under Rule 741 g.

The record discloses that the witness did not come as a total surprise to the defendant or his counsel. Two days before the trial began in the course of *voir dire,* the prospective jurors were asked if any of them were acquainted with any of the witnesses whose names and addresses were then read in open court. Sprinkle's name and address were on the list. The defense, obviously, had notice that Sprinkle was going to be called and if it considered his testimony crucial could have asked for a continuance to permit the

preparation of any defense to his testimony. Finally, an examination of his testimony makes it clear that the witness' testimony was cumulative to that of a previous State witness, Officer Jones, who had testified to essentially the same facts in the course of examination in chief and cross-examination. We find no error in this case.

*Judgments affirmed.*
*Costs to be paid by appellant.*