David Charles STEPHENS *v.* STATE of Arkansas

CR 86-117                          720 S.W.2d 301

Supreme Court of Arkansas
Opinion delivered December 8, 1986

*John W. Settle*, for appellant.

*Steve Clark*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. This criminal appeal challenges two rulings by the trial court. Appellant David Stephens was charged with aggravated robbery, kidnapping and felon in possession of a firearm. Although the victim of the kidnapping testified to being raped several times by appellant, and he was charged with kidnapping for the purpose of engaging in sexual intercourse with her, the appellant was not tried on that charge. The case was heard before a jury and appellant was found guilty on all three charges.

Appellant first argues the trial court erred in allowing the victim to remain in the courtroom during the trial. A.R.E. Rule 616 allows the victim of a crime the right to be present during a trial, notwithstanding Rule 615 which permits the exclusion of witnesses when requested by either party. Rule 615, referred to in trial parlance as "the rule," makes no specific reference to the victim, but gives the trial court the discretion to make exceptions with respect to: (1) a party who is a natural person, or (2) an officer or employee of a party that is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause. Rule 616, however, purports to leave no discretion to the trial court. It should be noted that Rule 616 was added to the Uniform Rules of Evidence by the 1985 General Assembly and was not, therefore, affected by our decision in *Ricarte* v. *State*, 290 Ark. 100, 717 S.W.2d 488 (1986). We should have adopted Rule 616 as a rule of court along with the other rules of evidence and we hereby do so.

Appellant contends Rule 616 is unconstitutional, but has not demonstrated how the presence of the victim was so fundamentally or inherently unfair as to deprive him of a fair trial. No authority is cited, nor convincing argument given, in support of the argument. Nothing in the constitution touches on the exclusion of witnesses during criminal trials. The Sixth Amendment to the United States Constitution and Article 2, Section 10 of our own guarantee an accused a speedy and public trial and to be confronted with the witnesses against him. Otherwise neither document contains anything that might be seen as a right to limit

those who may want to attend the trial.

■ ■ Inasmuch as the rule permitting the exclusion of witnesses originated with the legislature, we can conceive of no reason why the rule cannot be modified in the same manner, or by court rule if need be. We can suppose that there would be circumstances when the victim's presence throughout the trial could be seen as putting the fairness of the trial in jeopardy, as occurred in *Commonwealth* v. *Lavelle*, 419 A.2d 1269 (Pa. Sup. Ct. 1980). However, we find nothing comparable here and imply no attitude in that regard. The victim was the second witness called and the material parts of her testimony were based on her own knowledge and could not have been influenced by previous testimony.

As his second point, appellant argues the trial court erred in allowing the state to elicit testimony from one of the police officers about appellant's silence and his request for counsel after having received *Miranda* warnings. On direct examination the defense made several inquiries into matters relating to appellant's inter-rogation. The questions and testimony elicited suggested the appellant had a drug problem, was confused about the events at the time of the crime and interrogation, and was cooperative and helpful when being examined by the police. On cross examination the state asked the officer if appellant had done everything he was asked including giving a written statement. The officer testified the appellant had declined to make a formal statement and had also asked to talk to a lawyer before going any further. Appellant argues that under *Doyle* v. *Ohio*, 426 U.S. 610 (1976) this was impermissible and the case should be reversed on that basis.

■ In *Doyle*, a defendant's post-*Miranda* silence was used to impeach his testimony at trial. The court found the *Miranda* warning gives implicit assurance to any person who receives it that his silence will not be used against him.

> In such circumstances it would be fundamentally unfair and a deprivation of due process to allow the person's silence to be used to impeach an explanation subsequently offered at trial.

The state contends this case is distinguishable from *Doyle* because here there was no attempt to impeach an exculpatory story, nor was the testimony offered to show that appellant's

silence suggested guilt. The state argues the testimony went to clarify earlier statements of the officer elicited by the defense which had suggested appellant was confused and couldn't remember much of what went on. This was also the approach appellant took in his testimony with regard to the events of the crime—he never denied any of the charges but, perhaps to mitigate his punishment, testified he'd been on drugs and had no memory of the alleged crime.

It does not appear that *Doyle* can be distinguished on this basis. In a very recent case, *Wainright* v. *Greenfield*, 474 U.S.___ (1986) (Slip Op. 84-1480), the Supreme Court rejected a similar argument. There the defense was insanity and the burden was on the state to prove sanity. The state argued proof of sanity is significantly different from proof of the commission of the underlying offense and the silence was not being used to suggest guilt. The Court found no warrant for the claimed distinctions from *Doyle*. The Court said:

> The point of the *Doyle* holding is that it is fundamentally unfair to promise an arrested person that his silence will not be used against him and thereafter to breach that promise by using the silence to impeach his trial testimony. . . . In both situations [Doyle and the insanity defense] the State gives warning to protect constitutional rights and implicitly promises that any exercise of those rights will not be penalized. In both situations the State then seeks to make use of the defendant's exercise of those rights in obtaining his conviction. The implicit promise, the breach, and the consequent penalty are identical in both situations . . . What is impermissible is the evidentiary use of an individual's exercise of his constitutional rights after the State's assurance that the invocation of those rights will not be penalized.

Under the language of *Wainwright*, our case would come within the prohibition of *Doyle*. While appellant's post-*Miranda* silence was not being used to suggest guilt or impeach an exculpatory story, it was nevertheless of evidentiary use to the state in the prosecution of its case.

The rule in *Doyle* however, has its limits and can be overcome in certain circumstances. If the appellant himself

initiates the testimony in this area, he may "open the door" for the state. *U.S.* v. *Fairchild*, 505 F.2d 1378 (5th Cir. 1975). Such was the case here. The direct examination by the defense of the officer with respect to appellant's condition and behavior during the interrogation, culminated in the officer agreeing with defense counsel that appellant was polite, cooperative and had done everything asked of him. The state inquired on cross examination whether "doing everything" included giving a written statement and the officer made reference to appellant's silence and request for counsel. The prosecution did not dwell on this point nor was it referred to again, including closing argument.

The trial court admitted the testimony because the defense had opened the line of questioning and we agree. A very similar situation arose in *U.S.* v. *Fairchild, supra.* That opinion preceded *Doyle*, but the *Fairchild* court recognized the principle enunciated in *Doyle*. It found similar proof by the defense had opened the door to the fact of the defendant's silence. Here, defense questions and the answers received on the topic of the interrogation invited the state to make the limited inquiry it did. See also, *Bell* v. *State*, 446 So.2d 1191 (La. 1984).

We note in closing that a curative instruction was given, appellant's silence was not used to suggest guilt, the line of questioning originated with the defense and the sufficiency of the evidence was never questioned. See, *Williams* v. *Zahradnick*, 632 F.2d 353 (4th Cir. 1980). See also, *Hobbs* v. *State*, 277 Ark. 271, 641 S.W.2d 9 (1982).

The judgment is affirmed.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. As early as December 15, 1791, with the passage of the Bill of Rights, a person who is suspected of committing a crime has the right to remain silent and the right to have counsel present while being questioned by the authorities. No amendment has changed the Bill of Rights nor do the courts or the various legislatures have the power to do so. In the well-known opinion of *Miranda* v. *Arizona*, 382 U.S. 436 (1966), the United States Supreme Court declared that an accused has the right to remain silent without having such silence used against him. The same Court emphasized and reaffirmed

*Miranda* in *Doyle* v. *Ohio*, 426 U.S. 610 (1976). In *Doyle* the Court clearly and unequivocally stated, "It would be fundamentally unfair and a deprivation of due process to allow a person's silence to be used to impeach an explanation subsequently offered at trial."

In the present case the appellant's election to remain silent was used against him by the lower court and this action is being sanctioned by the majority. It makes no difference to an accused whether his constitutional right is denied from the beginning or withdrawn at a later time under the guise of another procedure. The net result is the same; there might as well have been no right from the outset.

It appears that the trial court had the correct insight when it stated, "[i]t would make me feel better if you didn't ask him about that, but if you insist, I'm going to let you do it." The methodology or means used to bring the appellant's silence to the attention of the jury is immaterial, the result is the same. In this instance the error could have easily been prevented by the trial court informing the prosecutor not to mention the accused's silence. The reference to appellant's right to remain silent was not an inadvertent slip of the tongue nor was it "fighting fire with fire." This was simply and clearly a case where a third party was used to destroy the accused's right to remain silent.

I disagree with the rationale used to allow the introduction of such testimony under the theory that the defendant "opened the door." Expansion of this theory might easily result in allowing such testimony to be used to prove that by committing the offense a defendant waives the right to remain silent.