596 A.2d 78

**Edward WHEELER**

v.

**STATE of Maryland.**

**No. 1641, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Oct. 1, 1991.

514

**516**

Mark Colvin, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Carmen M. Shepard, Asst. Atty. Gen., Baltimore (J. Joseph Curran, Jr., Atty. Gen., Baltimore and Robert W. Hamilton, Former State's Atty. for Allegany County, Cumberland, on the brief), for appellee.

Submitted before BLOOM, CATHELL and MOTZ, JJ.

CATHELL, Judge.

On July 13, 1990, Edward Wheeler was convicted by a jury in the Circuit Court for Allegany County (Sharer, J.) of first degree rape, second degree rape, first degree sexual offense, second degree sexual offense, kidnapping, and assault with intent to rape. The trial judge merged the convictions for second degree rape, sexual offense, and assault. Wheeler was sentenced to concurrent life terms on

the rape and sexual offense convictions, and 30 years on the kidnapping conviction. All but 35 years was suspended.

On appeal, Wheeler contends that:

1. He was denied his constitutional right to a speedy trial;
2. He was denied his right to be present at the hearing at which trial was continued beyond the 180-day limit;
3. There was an inordinate delay in bringing the case to trial;
4. The court erred in allowing the prosecutor to question him about showing Charles Netzer a gun;
5. The court erred in restricting his cross-examination of the complaining witness; and
6. The court erred in allowing the complaining witness to remain in the courtroom after testifying and then permitting her to testify in rebuttal.

According to the testimony of the prosecuting witness, the appellant lured her away from her boyfriend, by promising to provide her with marijuana, to a spot where he produced a gun and told her he also had a knife. Upon receiving her promise to cooperate, he put the gun away, pulled her down an embankment, and forced her to engage in cunnilingus and sexual intercourse with him.

We shall address appellant's first three contentions together, as each of them relates to the delay in bringing Wheeler to trial. Appellant was arrested on August 26, 1988. The public defender entered his appearance on October 28, 1988. The trial finally commenced on July 11, 1990, over 22 months after appellant's arrest.

■■ The Supreme Court enunciated a *four-factor* balancing test in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972),[1] used to determine whether an accused had been denied a constitutional right to a speedy trial. The four factors are: (1) the length of the delay; (2)

---

1. *Barker* involved a delay of over five years. No Sixth Amendment violation was found.

the reasons for the delay; (3) the accused's assertion of the right; and (4) the prejudice resulting from the delay.

### Length of the Delay

The arrest of a defendant, or formal charges, whichever first occurs, activates the speedy trial right. *State v. Gee*, 298 Md. 565, 572, 471 A.2d 712, *cert. denied*, 467 U.S. 1244, 104 S.Ct. 3519, 82 L.Ed.2d 827 (1984). In the case at bar, the period between arrest and trial was approximately 23 months. A delay of almost two years is presumptively prejudicial, *Smith v. State*, 276 Md. 521, 350 A.2d 628 (1976) (16 months); *Epps v. State*, 276 Md. 96, 345 A.2d 62 (1975) (over 12 months); *Howell v. State*, 87 Md. App. 57, 589 A.2d 90 (1991); *Schmitt v. State*, 46 Md.App. 389, 416 A.2d 296, *cert. denied*, 288 Md. 742 (1980), and certainly sufficient to trigger an analysis of the four factors enunciated in *Barker*, 407 U.S. 514, 92 S.Ct. 2182.

Our review of the record indicates that the delay incrementally occurred as follows:

### The First Postponement

On or about February 1, 1989, the State requested a continuance in order to conclude a DNA typing analysis. This continuance was to March 27, 1989.

### The Second Postponement

On March 27, 1989, the State and the defendant jointly requested a continuance in order for the defense to procure an independent DNA analysis and for the State to transfer its DNA result to written form. This continuance was to August 16, 1989, which carried the trial date past the 180–day requirement of Md. Rule 4–271.

### The Third Postponement

On August 14, 1989, the defense requested another continuance to obtain further DNA typing analysis. The new trial date was scheduled for November 8, 1989.

### The Fourth Postponement

Prior to November 8, 1989, the State requested and received a continuance based on health problems of the complaining witness which were purported to be complications relating to a pregnancy. The defendant was also having problems locating a missing witness and did not object to the continuance. The case was then continued to May 30, 1990.

### The Fifth Postponement

On May 29, 1990, new counsel appeared for the defendant and moved to have the case dismissed, which was denied and also moved for a further continuance. The trial was then scheduled for July 11, 1990.[2]

We shall discuss each of these periods, applying the tests of *Barker, supra,* and its progeny.

### *Reasons for the Delay*

### The First Postponement

■ The State requested that the defendant provide a blood sample for testing. According to argument made by the State at a May 1990 hearing on a Motion to Dismiss on speedy trial grounds, this blood sample was not voluntarily given as had been previously agreed to and was only produced on February 1, 1989, pursuant to either a court order or search warrant.[3] Thus, the State argued, there was a necessity for a continuance in order to test the blood recently obtained. The court granted the continuance and reset the trial date to March 27, 1989. The defense did not object to the postponement. When a delay is necessitated by the failure of the State to prepare its case, that delay weighs heavily against it. *Brady v. State,* 291 Md. 261,

---

2. The defense had also requested and received a postponement while the case was in the District Court awaiting a preliminary hearing.

3. We have been unable to find such court order or warrant. Nevertheless, appellant's counsel did not then, nor does his current counsel in his appeal brief now, deny the position taken by the State.

267, 434 A.2d 574 (1981), *Ferrell v. State*, 67 Md.App. 459, 464, 508 A.2d 490 (1986). *See also Howell*, 87 Md.App. at 84, 589 A.2d 90, and cases therein cited. When, however, that delay is caused, at least in part, by the defendant's reneging on an agreement, the delay should not be chargeable to the state.

### The Second Postponement

■ The State and the defense joined in a Motion for Continuance on March 27, 1989. The State informed the court that DNA testing had been completed and the results orally furnished to the State, but that it would take five to six weeks to get a written report. The appellant's attorney informed the court that he needed time to respond to the State's test results:

BY THE COURT: Mr. Donahue, initially Mr. Wheeler is not present. You're satisfied to proceed with this matter without his presence, is that correct?

MR. DONAHUE: Yes sir.

BY THE COURT: You've discussed with him whatever it is you're about to tell me?

MR. DONAHUE: Until this morning I didn't know about the results of the test, Your Honor, but we had previously discussed the possibilities of depending on the results of the State's analysis, having our own analysis done.... I would move that a continuance be granted to allow me to make or on behalf of the Defendant an analysis ... proper analysis of the situation.

BY THE COURT: All right. Then this is another joint motion for a continuance, correct, gentlemen?

MR. HAMILTON: Yes.

MR. DONAHUE: Yes sir.

The court granted what it considered to be a joint request for continuance. It requested that each party inform it as to how much time would be needed for that party to be ready in respect to the DNA issue. The appellant responded by letter from his counsel dated March 31, 1989, in which

the defense informed the court it would need an additional 12 weeks after the 5 weeks within which the State would receive the report, or a total of 17 weeks. The court then rescheduled the trial to August 16, 1989.

The appellant argued below in his later Motion to Dismiss, and argues on appeal, that the State waited until six days before the original trial date to request a blood sample from appellant. Wheeler argues that because the State waited to get a blood sample, it somehow caused the appellant to delay getting a sample of his own blood tested. Therefore, the appellant argues, his joining in the request for a continuance should not result in this delay being considered neutral.

The appellant chose to wait until the results of the State-procured tests were completed before seeking testing on his own. There is no allegation that the State directly interfered with Wheeler's ability to initiate his own testing. This time is not chargeable to the State.

This new trial date carried the trial past the 180–day requirement of Md. Rule 4–271. The postponement request, however, was made at least jointly by the parties, and thus was requested by the appellant.[4] We, therefore, decline to hold that the provisions of Md. Rule 4–271 have been impermissibly violated. *See Miller v. State,* 53 Md. App. 1, 6, 452 A.2d 180 (1982), *cert. denied,* 295 Md. 302 (1983) (discussing former Md. Rule 746). We said in *State v. Lattisaw,* 48 Md.App. 20, 29, 425 A.2d 1051, *cert. denied,* 290 Md. 717 (1981), "As *[State v.] Hicks* [285 Md. 310, 403 A.2d 356 (1979)] makes clear, the 180–day requirement is not entirely for the accused's benefit, and can be waived *by*

---

4. At a subsequent hearing on November 6, 1989, the trial court, in the presence of the defendant, opined that this had been a joint request for a continuance and that this continuance was the one extending the period past the 180 days. The defendant raised no objection to this characterization. In his Motion to Dismiss on speedy trial grounds Wheeler conceded that the 180–day rule did not apply.

*counsel."* (Emphasis in original.) [5]

### The Third Postponement

■ The defendant filed a Motion for Continuance based upon the need of the defense to conduct its own DNA typing to counter the results of the State test. He argued that, because the State had used the firm Cellmark, the defense was compelled to employ a New York firm, Life Codes Corporation, and that that firm's results would not be available in time for trial.

We fail to see how the State's actions in any way infringed upon appellant's ability to (1) obtain a blood sample from the appellant and have it tested prior to the State's testing, and (2) to submit a sample to Cellmark prior to the State's submission. This time is chargeable to the defense.

### The Fourth Postponement

■ The State moved for a continuance on grounds that the trial might adversely affect the health of the State's complaining witness. The victim was then pregnant, and the State had been advised by her doctor that the prospect of testifying was causing stress which might result in complications. The State represented that the doctor felt that the best interests of the woman and the baby required that she not testify at that time. The victim was obviously an essential witness. The court granted the continuance to a time after the anticipated birth of the baby.

We were faced with a similar situation involving multiple postponements, based upon the unavailability of a witness due to health reasons, in *Howell,* 87 Md.App. 57, 589 A.2d 90. We said:

---

**5.** The *Hicks* Court explicitly stated: "A ... circumstance where it is inappropriate to dismiss the criminal charges is where the defendant, either individually *or by his attorney,* seeks or expressly consents to a trial date in violation of Rule 746. It would, in our judgment, be entirely inappropriate for the defendant to gain advantage from a violation of the rule when he was a party to that violation." *Id.* at 335, 403 A.2d 356 (emphasis added).

The record contains a letter from a clinical psychologist which states that "a court room ordeal will cause my client to experience a full blown psychotic break." The State's failure to compel her presence was therefore excusable, and we shall consider this period of delay as neutral.

*Id.* at 82–83, 589 A.2d 90 (footnote omitted). We shall, in the case *sub judice,* also consider this delay as a neutral period and not chargeable to either party. Indeed the facts suggesting this result are stronger here than in *Howell* because here the defense informed the court at the hearing on the motion that it was having difficulty locating one of its witnesses. After so informing the court, and raising no objection to a continuance, the defense asked the court to review the defendant's bond. Accordingly, when the continuance was granted by Judge Sharer, he stated:

I will grant the State's continuance, which I take not to be seriously contested by the Defendant based on the fact the Defendant himself now concedes that an important witness is unavailable to him on the 8th.... Good cause continues to exist....

The court also reduced defendant's bail at that time.

### The Fifth Postponement

■ This continuance was requested by the defense because the defendant had obtained new counsel, who needed more time to prepare for the trial. It therefore is chargeable to the appellant.

### Assertion of the Right

■ The trial date was already scheduled for May 30th when Wheeler first asserted his rights to a speedy trial on May 11th. The Supreme Court, in *Barker,* held that a speedy trial right is not waived for all time by a failure to demand it, but "[t]his does not mean, however, that the defendant has no responsibility to assert his right." *Id.* 407 U.S. at 528, 92 S.Ct. at 2191.

While the appellant asserted his right to a speedy trial, the record before us reveals that it was asserted for the first time approximately 22 months after his arrest and within 3 weeks of his then-scheduled trial date. The only delay thereafter was caused by his newly obtained counsel's request for a continuance. The appellant's extensive delay in asserting the right in the case at bar is virtually tantamount to a failure to assert the right. In the balancing test, his belated assertion carries little weight.

### Prejudice

■■■ Wheeler argued below, in his Motion to Dismiss, that he had been prejudiced during the delay by the enactment of a new statute, now codified as Md.Cts. & Jud.Proc. Code Ann. § 10–915 (1989 & Supp.1990), declaring DNA analysis as admissible evidence. Prior to the statute's enactment, such evidence was admissible only if a proper foundation as to its scientific acceptance was laid. *See Cobey v. State*, 80 Md.App. 31, 43, 559 A.2d 391, *cert. denied*, 317 Md. 542, 565 A.2d 670 (1989). The new statute merely codified that foundation. The trial court found that:

I'm not prepared to rule that the fact that the Legislature has seen fit to sanctify a testing process that previously was required to be done on a case by case basis creates prejudice to the defendant.

We agree. We note, as did Judge Sharer, that both parties apparently utilized DNA testing and that the new statute "will facilitate the introduction of the evidence of his [Wheeler's] testing just the same as it will facilitate ... the admissibility of evidence offered by the State...."

■■■ While we agree that extensive incarceration may be presumed to be prejudicial, we note that bail originally set at $100,000 had been lowered to $25,000. At the time the bail was reduced to $25,000, it was pointed out to the trial court that the appellant had an extensive criminal record, including convictions for battery, theft, petty larceny, criminal mischief, assaults, and shoplifting. At the time he was arrested on the instant charges, he was on parole from a

previous assault conviction.[6]   Under the circumstances, we find that the pretrial incarceration was not unduly oppressive.

As to the elements of anxiety and concern, we are aware, of course, that such delays may well place emotional stress upon those incarcerated, as they contemplate trial and/or sentencing.  *See Jones v. State,* 279 Md. 1, 17, 367 A.2d 1 (1976), *cert. denied,* 431 U.S. 915, 97 S.Ct. 2177, 53 L.Ed.2d 225 (1977).  We are also aware, however, that much of the delay was caused by appellant's requests for continuances. We also note that in the argument below on his Motion to Dismiss, Wheeler made only bare assertions; he merely parroted the "oppressive pre-trial incarceration" and "anxious" language of the cases without specifying the nature of his oppression or anxiety.   The Court of Appeals, in *State v. Bailey,* 319 Md. 392, 417, 572 A.2d 544 (1990), when faced with similar assertions, stated:  "Bailey makes the flat assertion in his brief that '[t]hroughout the two years he lived with the anxiety and concern naturally caused by a pending prosecution.'   This bald statement, in the circumstances, has little significance."   As the trial court, in the case at bar, opined:

> There is a bald allegation that he suffered emotional distress as a result of delay.   That's all I've heard.   And while he has no obligation to prove prejudice, it must be apparent on the record.

We agree.   Other than the fact of the incarceration itself, the record contains no evidence of prejudice.   There is no evidence that any witnesses were absent at the time of trial that would have been available earlier, or that evidence had disappeared, or that the defense was otherwise hampered. On the basis of the record, we are unable to find that his defense was impaired.   We, therefore, regard the effect of this element as minimal.

---

**6.**   This was reflected in the transcript of the hearing on his Motion for New Trial, and sentencing.   His parole had once been revoked for absconding from a halfway house-type facility.

## Balancing

Considering the four factors, we do not believe that the trial court erred in denying the Motion to Dismiss. The delay was, of course, of constitutional dimension. In applying the four-factor balancing test, however, we note that, by our calculations, none of the delay is attributed solely to the State. The delay, from November 8, 1989, to May 30, 1990, caused by the pregnancy complications of the victim, causes us some concern. Considering the nature of the case, *i.e.*, rape, and the nature of the victim's health problems, we are unable to disagree with the trial judge's finding that this continuance was necessary. Accordingly, we have held that it was neutral. The remaining delays were either caused solely by the appellant or jointly by appellant and the State. These delays weigh heavily against appellant, as does the appellant's failure to cooperate with counsel which caused the final delay.[7] We also place emphasis upon appellant's failure to assert the right until just before the trial, as there is nothing in the record prior to that time to indicate a sincere desire on his part for a speedy trial.[8]

We hold that the appellant's speedy trial rights were not violated. We perceive no error in the trial court's denial of Wheeler's Motion to Dismiss.

---

7. Mr. Snyder, his first appointed attorney, asked to have his appearance stricken because appellant would not cooperate in his defense. A Mr. Donahue then entered his appearance and remained in the case until the late spring of 1990 when appellant apparently discharged him. Thereafter, the public defender's office attempted to appoint Mr. Smith, but Wheeler refused to meet with him. The court then appointed Mr. Kelly. Mr. Kelly's appearance was stricken at Wheeler's request. The court then attempted to appoint Mr. Noowan, but Wheeler rejected him. Thereafter, Mr. Goldbloom entered his appearance. One of Mr. Goldbloom's first actions on behalf of Wheeler was a request for a continuance.

8. There was no constitutional violation in *Barker v. Wingo, supra,* because the Court held that the defendant did not really want a speedy trial.

### 4.

**Did the trial court err in allowing the prosecutor
to question Wheeler about showing Charles
Netzer [9] a gun?**

██ When the State questioned the appellant about showing Netzer a gun, the appellant objected. When asked to specify the grounds, his counsel stated only: "Broad. General. No foundation." Wheeler now appears to contend that a prior ruling, concerning a similar question propounded to Netzer when he was on the stand, indicated that the question was designed to elicit inadmissible "other crimes" evidence. This, he asserts, indicates that the trial court's permitting Wheeler to be asked such a question is reversible error. We decipher his current argument to be based on the admissibility rules relating to "other crimes" evidence. That ground, as we have said, was not offered when he objected below. He, therefore, has failed to preserve this issue.[10] "[W]hen an objector sets forth the specific grounds for his objection, ... the objector will be bound by those grounds and will ordinarily be deemed to have waived other grounds not specified." *Brecker v. State*, 304 Md. 36, 39–40, 497 A.2d 479 (1985). We also perceive that the issue of appellant's possession of a gun was relevant, given the use of a handgun in the commission of the crimes for which he was charged and convicted. We see no error.

### 5.

**Did the trial court err in restricting cross-examination
of the complaining witness?**

██ The victim, on direct examination, responding to a question as to when she had last participated in intercourse

---

**9.** Appellant's brief identifies him as Netzer. Some of the transcripts we have reviewed indicate his name was Metzer.

**10.** We, in any event, fail to see how showing someone a gun is "other crimes" evidence. Showing someone a gun, without more, is, as far as we know, not a crime unless a criminal statute is violated.

prior to the alleged incident, testified that she had had intercourse with only one other person over a period of a year and a half. The appellant now argues that: "Testimony that she had sexual intercourse with him [the other person] over that year and a half period would have been relevant and material to a fact in issue—whether she consented to have sexual intercourse with Wheeler—and would have impeached her testimony that the intercourse was not consensual." To assert that a person's consensual relationship with another is relevant as to whether she consented to sexual acts with appellant is ludicrous. There was absolutely no connection made or suggested between the prior act(s) with another person and the incident with appellant. That evidence was neither relevant nor material. The State did not put her prior sexual conduct in issue.[11] That question, and her answers, were then relevant to explain the lack of any source, other than appellant, for the presence of semen on the date of the offense.

Appellant's cross-examination on this point was nothing more than a blatant, repugnant attempt to circumvent the prohibitions of the Maryland rape shield law. *See* Md.Ann. Code art. 27, § 461A (1987). The trial court recognized this and did not err in restricting the cross-examination.

### 6.

Did the trial court err in allowing the complaining witness to remain in the courtroom after she testified in the State's case-in-chief and to then testify as a rebuttal witness?

Maryland Rule 4–321 mandatorily provides in its initial sentence that:

On motion ... made before testimony begins the court

---

11. We doubt that a relationship with one person over a year and a half would, in any event, put a person's sexual conduct in issue.

*shall* order that witnesses other than parties[12] be exclud-
ed ... before testifying.... [Emphasis added.]

The second sentence of the section applies to witnesses who
have already testified and the mandatory language of the
first sentence is conspicuously absent. The second sentence
states that:

The court *may* continue the exclusion of a witness follow-
ing the testimony of that witness if a party indicates that
the witness may be recalled.... [Emphasis added.]

As we read the rule, exclusion, prior to a witness's testimo-
ny is mandatory; thereafter it is discretionary.

Appellant, in the case at bar, has failed to
identify any particularized prejudice resulting from the
victim's remaining in the courtroom after she testified. She
was permitted to remain under the portion of the sequestra-
tion rule which permits the trial court to exercise discretion,
as well as pursuant to Md.Ann.Code art. 27, § 620 (1987 &
Supp.1990). Even in the absence of Article 27, section 620,
we would perceive no error.[13]

Maryland Ann.Code art. 27, § 620(b) provides: "A victim
or representative shall be presumed to have the right to be
present at the trial." The statute further provides that

---

12. Whether a prosecuting-complaining victim/witness is a party is
apparently an open question in this jurisdiction. In other jurisdic-
tions, victims have been treated as parties in respect to sequestration.
*See Bartlett v. State,* 733 P.2d 1350, 1353 (Okla.Cr.1987) where that
court said:

Appellant argues that the trial court erred in not honoring her
request that each victim be sequestered during the testimony of the
other. The rule of sequestering witnesses upon request has long
been applied, and it is now codified at 12 O.S.1981, § 2615. This
statute specifically provides that the rule will not apply to exclude a
party. See Subsection (1). This definition would necessarily ex-
tend to a prosecuting witness. *Johnson v. State,* 559 P.2d 466
(Okl.Cr.1977). Therefore, this assignment is without merit.

13. The complete exclusion of a witness's testimony as a sanction for
violation of a sequestration order "is not lightly to be imposed."
*Watkins v. State,* 59 Md.App. 705, 721, 478 A.2d 326 (1984). *See also
McCray v. State,* 305 Md. 126, 134, 501 A.2d 856 (1985); *McGill v. Gore
Dump Trailer Leasing, Inc.,* 86 Md.App. 416, 525, 586 A.2d 829 (1991).

such a person may only be excluded "after a finding of good cause."

The current statute was enacted in the 1989 session of the General Assembly as Chapter 486 of the Acts of 1989. The 1989 Act, originally introduced as Senate Bill 416, repealed and reenacted the prior statute. The primary change in the two statutes was that the 1989 act created a presumption that a victim has "the right to be present at the trial." The repealed statute had merely provided that "(a)(1) A judge need not sequester a witness who has testified and who is: (i) The victim of a crime of violence...." Additionally, the current statute provides that a trial judge can *"only"* remove a victim "after a finding of good cause." It, then, in subsection (d) defines good cause as "the same causes and in the same manner as the laws or rules of court provide for the exclusion or removal of the defendant." [14]

The Floor Report of the Senate Judicial Proceedings Committee on Senate Bill 416 summarized, in part, the purpose of the bill: "This bill creates a presumption that a victim of a crime of violence ... has the right to be present at the trial ... after the victim has testified.... The Report also stated: "A judge may sequester a victim ... only after a finding of 'good cause.'" It then declared "good cause" would be the "same causes" provided for the exclusion of defendants. The report then stated that "[t]he purpose of this bill is to *minimize* the discretion trial courts may exercise in deciding whether to sequester victims during trial." (Emphasis added.)

We have been unable to find any cases in which Maryland's appellate courts° have construed section 620. We

---

**14.** Maryland Rule 4–231(c)(1)(2) and (3) governs the exclusion of defendants. It provides that they may be excluded if
    (1) ... voluntarily absent after the proceeding has commenced, whether or not informed by the court of the right to remain; or
    (2) ... engages in conduct that justifies exclusion from the courtroom, or
    (3) ... agrees to or acquiesces in being absent.

note that it was referred to in a civil case involving the civil rules permitting corporate parties to designate persons that would be permitted to remain in the courtroom despite a sequestration order. *See Safeway Stores, Inc. v. Watson,* 317 Md. 178, 182 n. 3, 562 A.2d 1242 (1989) ("The criminal rule of exclusion is also subject to exceptions later created by the legislature. *See* Maryland Code (1957, 1987 Repl. Vol.) Art. 27, § 620, pertaining to the rights of the victim to be present after testifying at trial.")

Victim's rights statutes, such as section 620, are apparently of rather recent vintage.[15] We have conducted a finite review of the foreign authorities. That review has revealed but one other case which deals with this type of legislation. Arkansas apparently has a rule very similar to Md.Ann.Code art. 27, § 620. The Arkansas appellate court in *Stephens v. State,* 290 Ark. 440, 720 S.W.2d 301, 302–03 (1986), held:

> Appellant first argues the trial court erred in allowing the victim to remain in the courtroom during the trial. A.R.E. Rule 616 allows the victim of a crime the right to be present during a trial, notwithstanding Rule 615 which permits the exclusion of witnesses when requested by either party.... Rule 616, however, purports to leave no discretion to the trial court....
>
> Appellant contends Rule 616 is unconstitutional, but has not demonstrated how the presence of the victim was so fundamentally or inherently unfair as to deprive him of a fair trial.... Nothing in the constitution touches on the exclusion of witnesses during criminal trials. The Sixth Amendment to the United States Constitution and Article 2, Section 10 of our own guarantee an accused a speedy and public trial and to be confronted with the

---

**15.** We note, however, that there are earlier references to victims being permitted to remain in the courtroom by being characterized as parties. *See* 1 *Bishops New Criminal Procedure,* § 1188.1 (4th ed. 1895), which states *"A fortiori,* the party, though he is also to be a witness, cannot be excluded." (Footnote omitted, citing cases from Michigan, Mississippi and Oregon.)

witnesses against him. Otherwise neither document contains anything that might be seen as a right to limit those who may want to attend the trial.[16]

Inasmuch as the rule permitting the exclusion of witnesses originated with the legislature, we can conceive of no reason why the rule cannot be modified in the same manner....

*Stephens* has recently been cited in *Brandon v. State*, 300 Ark. 32, 776 S.W.2d 345, 346 (1989):

Error is also claimed because Mr. Heard remained in the courtroom during his wife's testimony even though the appellant had requested the witness sequestration rule. *See* A.R.E. Rule 615. Mr. Heard was a victim of the crime and had the right to be present notwithstanding Rule 615. *See Stephens v. State*, 290 Ark. 440, 720 S.W.2d 301 (1986); A.R.E. Rule 616.

In the case at bar, after the victim had testified the State requested that she be permitted, pursuant to Article 27, section 620, to remain in the courtroom. The appellant objected, asserting as his only grounds, "We may want to ... I can't guarantee, but we may want to call her as an adverse witness as part of our case. Certainly if she is to be recalled the whole purpose of sequestering the witnesses is to avoid hearing each other's testimony." The trial court permitted her to remain. At that point, the trial court was unaware, as was perhaps the State, that the State might call her in rebuttal.

The witness was never called as an adverse witness by the appellant. Wheeler, on appeal, does not allege that the

---

**16.** Other than a general "due process" claim linked to the victim's credibility, no constitutional problems were brought to the trial court's attention in the case at bar. On appeal, Wheeler raises no constitutional objections but primarily asserts that Section 620 defeats the purpose of Md. Rule 4–321. To the extent that it defeats the purpose of the rule it can be assumed that that was the Legislature's intention. We have found no federal or state constitutional provisions establishing sequestration as a constitutional right under either constitution.

victim's remaining in the courtroom in any way interfered with his ability to call her as an adverse witness. The only argument suggested to the trial court is not raised here. Thus, the appellant has apparently abandoned here the argument he made in the trial court.

He also asserts summarily that there is a "reasonable possibility that the complainant's rebuttal testimony affected the jury's verdict" without specifying how it could have been affected. We have reviewed that rebuttal testimony and concur with the State's position that the victim's rebuttal merely restated her original testimony.[17] We therefore do not perceive any reasonable possibility that the rebuttal had any significant effect upon the jury.

Wheeler, in any event, did not argue, below or on appeal, that the victim should have been excluded for any of the reasons stated in the statute. This statutory provision minimizes the trial judge's discretion. We hold, pursuant to the statute, that a victim of a crime of violence must be permitted to remain in the courtroom after testifying even if a sequestration order is in effect and may only be excluded for the same reasons that would result in the exclusion of the defendant. Judge Sharer complied with the statute.

We note that no objection was made when the State called the victim as a rebuttal witness. The grounds for objecting to a witness' continued presence in the courtroom and the basis for objecting to that witness' subsequent testimony may be unrelated and/or disparate.

During the defendant's case in *White v. State*, 66 Md. App. 100, 115, 502 A.2d 1084 (1986), his attorney learned that the State intended to call a rebuttal expert witness. The defendant asked for a bench conference and objected to

---

**17.** No issue was raised about the nature of the rebuttal, *i.e.*, restating prior testimony instead of rebutting testimony. Accordingly, we do not further address it. *See McCray v. State*, 305 Md. 126, 136–37, 501 A.2d 856 (1985).

the proposed witness. His objection was overruled and the defense completed its case. Thereafter, the State called the expert witness in rebuttal and the defendant did not renew his objection. We said:

> Before this Court, appellant asserts that since the State's rebuttal expert was allowed to be present in the courtroom, during testimony, the sequestration order was violated and the witness should not have been allowed to testify. Appellant does not raise any discovery violation grounds as asserted at trial. Appellant has not preserved the sequestration issue for appeal because the objection was not renewed when Dr. Dickman was actually called and no continuing objection was noted originally. We shall not reach the issue since appellant does not argue before us the issue he preserved and waived the issue he argues.[18]

Considering the limited nature of appellant's objection to the victim remaining in the courtroom, and his failure to object to her being called as a rebuttal witness, we hold that he has failed to preserve an objection to her rebuttal testimony. Maryland Rule 8–131. *See also Leuschner v. State,* 41 Md.App. 423, 397 A.2d 622, *cert. denied,* 285 Md. 731, *cert. denied,* 444 U.S. 933, 100 S.Ct. 279, 62 L.Ed.2d 192 (1979), *reh'g denied,* 444 U.S. 1027, 100 S.Ct. 693, 62 L.Ed.2d 662 (1980); *Towers v. Director, Patuxent Inst.,* 16 Md.App. 678, 299 A.2d 461 (1973).[19] We hold that when a

---

**18.** Our *White* holding was based solely on failure of preservation of the issue. In appropriate circumstances, expert witnesses may be permitted to remain in the courtroom.

**19.** We said in *Robinson v. State,* 66 Md.App. 246, 251, 503 A.2d 725, *cert. denied,* 306 Md. 289, 508 A.2d 489 (1986):

> Only the judge can commit error when he, called upon to rule, omits to rule or makes an incorrect ruling. In this regard, the appellant did not call upon the judge at any time to do anything. Ordinarily, with rare exceptions not here pertinent, there could be no error. [Citations omitted.]

In *Robinson,* we, commenting on the predecessor rule to Md. Rule 8–131, cited *Brown v. State,* 1 Md.App. 571, 576, 232 A.2d 261, *cert. denied,* 248 Md. 733 (1967), and stated, "One of the principal purposes

victim, or a victim's representative, is permitted to remain in the courtroom pursuant to Article 27, section 620, over the objection of a defendant, and that witness is recalled to testify, the defendant must preserve his objection to the further testimony of the victim by objecting at the time that testimony is offered.

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.

of this rule is to require counsel to bring the position of their clients to the attention of the lower court at the trial, so that the trial court can pass upon and possibly avoid or correct any errors in the proceedings." *Id.,* 66 Md.App. at 255, 503 A.2d 725.