Cite as 2022 Ark. App. 127

# ARKANSAS COURT OF APPEALS

DIVISION I

**No.** CR-21-413

| | | |
|---|---|---|
| ANDRE CORLEY | | **Opinion Delivered** March 9, 2022 |
| | APPELLANT | |
| | | APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT |
| V. | | [NO. 23CR-19-101] |
| | | |
| | | HONORABLE H.G. FOSTER, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED |

**WAYMOND M. BROWN, Judge**

Appellant Andre Corley was found guilty by a Faulkner County Circuit Court jury of second-degree domestic battering and aggravated assault on a family or household member. The jury imposed a sentence of ten years' and six years' incarceration, respectively. The jury also found Corley guilty of committing both offenses in the presence of a child and added an additional ten years as a sentencing enhancement. The circuit court ordered Corley to serve his sentences consecutively. On appeal, Corley argues the circuit court (1) violated his Sixth Amendment right to a fair trial by denying his request to exclude Tamekah Corley, the victim, from the courtroom; (2) abused its discretion by permitting the State to make an improper closing argument; and (3) abused its discretion by ordering his sentences to run consecutively. We affirm.

On January 22, 2019, Corley and his wife, Tamekah, got into an argument regarding the discipline of Tamekah's teenaged daughter, M.G., following the discovery that she had boys in the

house when her parents were not home. Corley insisted that Tamekah kick M.G. out of the house. He warned Tamekah that if she did not remove M.G. from the home, he would "put her out" when he returned home from work. Tamekah refused, stating that she had disciplined M.G. by taking away her phone and talking to her about lying. When Corley got home, he and Tamekah continued to argue and disagree on how to discipline M.G. Tamekah then stated that she and the girls[1] would leave instead of kicking her fifteen-year-old child out of the family home. The argument then became physical, with Corley attacking Tamekah; striking her in the head, face, shoulders, arms, sides, and back; causing her to fall down the stairs; and choking her until she temporarily lost consciousness. When Tamekah regained consciousness, the children had called the police, and Corley left the house.

As a result of the altercation, Tamekah sustained extensive injuries, including swelling to her face and jaw, tenderness in her shoulder, fractures to her seventh and eighth ribs, and a punctured lung caused by the broken ribs.

On January 25, the State filed its initial charges against Corley. After multiple amendments, the final amendment on May 10 charged Corley with second-degree domestic battering,[2] aggravated assault on a family member,[3] and terroristic threatening.[4] Pursuant to Arkansas Code Annotated

---

[1]At the time of the incident, Corley and Tamekah's younger daughters, AB.C. and AN.C., were also present in the house.

[2]Ark. Code Ann. § 5-26-304(a)(1) (Supp. 2021).

[3]Ark. Code Ann. § 5-26-306(a)(1) & (a)(3) (Supp. 2021).

[4]Ark. Code Ann. § 5-13-301(a)(1)(A) (Supp. 2021).

section 5-4-702(a)(8),[5] he was also charged with a sentencing enhancement for committing domestic battery or aggravated assault on a family member in the presence of a child.

On May 11, 2021, Corley was found guilty by a jury on the charges of second-degree domestic battering, aggravated assault on a family or household member, and the sentencing enhancement, finding that he had committed the offenses in the presence of a child. Corley was found not guilty on the charge of terroristic threatening. The jury recommended a sentence of ten years' imprisonment and a $10,000 fine for the second-degree domestic-battering conviction; six years' imprisonment and a $10,000 fine for the aggravated-assault-on-a-family-member conviction; and ten years' imprisonment for committing the offenses in the presence of a child. The jury also recommended that Corley pay $6,000 restitution to Tamekah. The jury made no recommendation with respect to Corley's sentences running consecutively or concurrently. After taking the sentencing issue under advisement, the circuit court ordered Corley to serve his sentences consecutively.

Corley has timely appealed.

Corley first argues that the circuit court violated his Sixth Amendment right to a fair trial when it denied his request to excuse Tamekah from the courtroom until she testified or, in the alternative, require the State to call her as its first witness.

With certain exceptions not applicable here, Arkansas Rule of Evidence 615 provides in relevant part that "[a]t the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion." Rule

_____

[5](Supp. 2021).

3

615 addresses trial witnesses; however, the trial presence of a victim is governed by Arkansas Rule of Evidence 616, which provides that victims "shall have the right to be present during any hearing, deposition, or trial of the offense." We have said that the victim of the crime has a right, pursuant to Rule 616, to be present during the trial "notwithstanding Rule 615."[6] Rule 616 "purports to leave no discretion to the trial court."[7]

Both the United States Constitution and the Arkansas Constitution guarantee a defendant the right to a fair trial.[8] Additionally, Arkansas Code Annotated section 16-90-1103(a)[9] provides that a victim "may" be present unless the court determines that the victim's exclusion is necessary to protect the defendant's right to a fair trial. Thus, the circuit court must sequester a victim, despite Rule 616, if it determines that the victim's presence would put the defendant's constitutional right to a fair trial in jeopardy.[10] Because the fairness of a defendant's trial is a constitutional issue, our review of this issue is de novo.[11]

Corley contends that he made the request to exclude Tamekah, the victim, from the courtroom out of concern that she could tailor her testimony on the basis of the testimony she heard from other witnesses who testified before her in order to "bolster the State's case against him."

---

[6]*Lard v. State*, 2014 Ark. 1, 431 S.W.3d 249.

[7]*Stephens v. State*, 290 Ark. 440, 720 S.W.2d 301 (1986).

[8]*Swindler v. State*, 267 Ark. 418, 592 S.W.2d 91 (1979).

[9](Repl. 2016).

[10]*Stephens v. State*, 290 Ark. 440, 720 S.W.2d 301 (1986).

[11]*Swain v. State*, 2015 Ark. 132, 459 S.W.3d 283.

Relying on *Dominguez v. State*,[12] Corley argues that the circuit court erred by summarily rejecting his request because it "had a duty to give the issue more consideration than it did." Specifically, Corley argues that *Dominguez* provides that, despite Rule 616, the circuit court must exclude a victim if the victim's presence jeopardizes the defendant's right to a fair trial. Here, Corley complains that the circuit court denied his request to excuse Tamekah from the courtroom without first making any such determination.

*Dominguez* is readily distinguishable from the case at bar. *Dominguez* was a multicount trial involving different victims. Dominguez argued that he was prejudiced when the circuit court permitted one of the victim-witnesses to remain in the courtroom during the testimony of other witnesses and during the State's case concerning the charges in which she was not the victim.[13] Here, Tamekah was the victim on all counts against Corley. This important difference, overlooked by Corley, makes his reliance on the case misplaced. Further, in *Dominguez*, the circuit court's allowance of the victim-witness to remain in the courtroom throughout the trial was affirmed on appeal.[14] Our supreme court held that Dominguez failed to demonstrate that the victim's presence impacted his right to a fair trial.[15]

As in *Dominguez*, Corley has not demonstrated how he was deprived of his constitutional right to a fair trial by Tamekah's presence during the testimony of the preceding witnesses. While he

---

[12]2020 Ark. 286.

[13]*Id.*

[14]*Id.*

[15]*See id.*

contends that Tamekah could have tailored her testimony to conform to what she heard from other witnesses, Corley points to no specific testimony provided by Tamekah or inconsistencies in her testimony that could have been influenced by her presence during the testimony of other witnesses. Further, Corley was allowed to cross-examine Tamekah about her testimony. Importantly, Tamekah was the victim. Corley has not shown, beyond bare assertions, how her presence during the testimony of other witnesses jeopardized his right to a fair trial when the material parts of her testimony were based on her personal knowledge.[16] Prejudice is not presumed from the circuit court's failure to sequester a witness.[17] "An appellant must do more than allege prejudice, he must demonstrate it."[18] Again, Corley's bare allegations are insufficient to demonstrate prejudice.

Next, we find no merit to Corley's assertion that the circuit court denied his "compromise" request that Tamekah be called as the State's first witness, which he contends would have protected his constitutional right to a fair trial and simultaneously respected Tamekah's right to be present during all aspects of the trial.

At Corley's trial, the following colloquy took place:

| THE STATE: | The State has no objection for the sentencing phase. I will put on the record State is requesting her presence, the victim to be present during the entire trial. |
| --- | --- |
| THE COURT: | Do you have any objection to that? |
| CORLEY'S COUNSEL: | Your Honor, I am concerned that she may take her testimony, based on cross-examination that I give to other witnesses, so that's my concern. I have no problem with it after she |

---

[16]*See Stephens*, *supra*.

[17]*Adams v. State*, 2013 Ark. 174, 427 S.W.3d 63.

[18]*Id*. at 14, 427 S.W.3d at 72.

| | |
|---|---|
| | testifies.   But her hearing the testimony, tailoring her testimony to where my case is going, I may have a problem with that, especially if she's not the first witness. |
| THE COURT: | I understand the objection.  I'm under the impression it allows the victim to be present during the case during the presentation of the State's case during the trial.  So guys, I'm going to say, she can stay in the courtroom. |

At that point, the bench conference concluded, and the State called its first witness, with no further objection from Corley.

Despite Corley's assertion that he requested, as a compromise, that the State call Tamekah as its first witness, our review reveals no such request.  The only reference to this particular issue was in regard to Corley's request to exclude Tamekah from the courtroom, "especially if she's not the first witness." This fails to amount to a request that the victim be called to testify first.    The failure to raise or to develop this related—but separate—argument below bars consideration of the issue on appeal.[19]  Moreover, not only did Corley fail to request that Tamekah be called as the State's first witness, but the circuit court never ruled on the issue.  The failure to obtain a ruling below precludes appellate review.[20]

On appeal, Corley also argues that the circuit court abused its discretion by allowing the State to make improper arguments at closing.  He contends that during the State's rebuttal closing argument, the circuit court abused its discretion by permitting the State to argue that Corley's absence from the home following the incident during which his wife, Tamekah, suffered serious injuries was evidence of his guilt.  Corley argues that this inflammatory argument was far beyond the

---

[19]*Hamilton v. State*, 2020 Ark. App. 482, 612 S.W.3d 185.

[20]*Vaughn v. State*, 2015 Ark. App. 136, 456 S.W.3d 767.

bounds of the charges and evidence in the case, and the argument was "calculated solely to appeal to the jury's passions rather than to its sense of reason."

Corley contends that on March 22, 2019, the circuit court entered a no-contact order that prohibited him from having any contact with Tamekah or with anyone in Tamekah's immediate family. Corley claims that because the jury was not informed of the no-contact order barring him from contacting Tamekah, the State "illegitimately exploited" a fact not disclosed to the jury at trial during closing argument.

Circuit courts are given broad discretion to control counsel in closing argument, and appellate courts do not interfere with such discretion absent manifest abuse.[21] Remarks in closing requiring reversal are rare and must have appealed to jurors' passions.[22] We have stated that closing arguments must be confined to questions in issue, the evidence introduced during trial, and all reasonable inferences and deductions that can be drawn therefrom. It is the circuit court's duty to maintain control of the trial and to prohibit counsel from making improper arguments.[23] The State is permitted in rebuttal to comment on matters that were discussed or invited by a defendant's closing argument.[24] The circuit court is in the best position to evaluate the potential for prejudice based on the prosecutor's remarks.[25]

---

[21] *Raquel-Dieguez v. State*, 2015 Ark. App. 626, 475 S.W.3d 585.

[22] *Id.*

[23] *Peebles v. State*, 305 Ark. 338, 808 S.W.2d 331 (1991).
[24] *Id.*

[25] *Noel v. State*, 331 Ark. 79, 960 S.W.2d 439 (1998).

8

Corley argues for reversal of his convictions, contending that the State's remarks about Corley's "not being there" during his wife's approximate six-week recovery from her injuries was beyond the record and prejudicial. When Corley objected to the rebuttal statement at closing, the State responded, "Judge, [Corley's] argument is that he didn't cause this injury and that [Tamekah's] lying. The State's position, if he truly did not cause injury he would have been there with intention to help." The circuit court overruled the objection. The State went on to offer the following in rebuttal:

> The three kids were there helping their mom overcome this. So, ladies and gentlemen, if Mr. Corley didn't do this, why was he not there picking up the aftermath of the injuries to his wife? Because he was there during the beating and he knows exactly who did it.

Corley's defense at trial and the basis for his directed-verdict motion, as well as his assertion during closing, was that the State failed to prove that he was the cause of any physical injury to Tamekah. In rebuttal, the State responded that Corley's actions following Tamekah's injuries—his absence and lack of concern for his wife's health—were evidence of his guilt. The State is permitted in rebuttal to comment on matters that were discussed or invited by a defendant's closing argument.[26] Corley denied that he was guilty of assault and battery, thereby inviting the State to prove otherwise. Moreover, the rebuttal was based on reasonable inferences that could be drawn from the facts and evidence of the case, which is within the parameters of allowable rebuttal argument.[27] Additionally, the statements were not foreign to the charges against Corley. We find no abuse of discretion by the circuit court's overruling Corley's objection to the State's closing argument.

---

[26]*Id.*
[27]*See Dickerson v. State*, 363 Ark. 437, 214 S.W.3d 811 (2005).

As for Corley's assertion that he was not by his wife's side during her recovery because of a no-contact order prohibiting him from contacting her, the record does not support the argument. The no-contact order was entered on March 15, 2019, nearly two months after the January 22 incident during which Tamekah sustained her injuries. The approximately six weeks it took for Tamekah to recover and return to work had passed by the time the no-contact order was entered. Therefore, there was no order prohibiting Corley from aiding Tamekah in her recovery.

For his last argument on appeal, Corley asserts that in the event this court affirms his convictions, his sentences should be vacated and the circuit court should be ordered to resentence him because the court abused its discretion when it ordered him to serve his sentences consecutively rather than concurrently.

Whether sentences should run consecutively or concurrently is a matter committed to the discretion of the circuit court, and this court will not reverse a sentencing decision unless the circuit court abuses its sentencing discretion.[28] A circuit court is not required to explain its reason for running sentences consecutively.[29] The appellate court will not presume that the circuit court failed to exercise its discretion.[30] The circuit court's failure to state its reasons for consecutive sentences, standing alone, is not sufficient to meet an appellant's heavy burden to prove the circuit court failed

---

[28]*Doster v. State*, 2020 Ark. App. 456, 610 S.W.3d 685.

[29]*Pyle v. State*, 340 Ark. 53, 8 S.W.3d 491 (2000).

[30]*Doster*, *supra*.

to exercise its discretion in the determination.[31]  Under these standards, we find no merit in Corley's argument regarding sentencing.

Corley argues, "Because the sentencing court in this case did not explain why [he] should serve his sentences consecutively, his sentences should be vacated, and this case should be remanded for resentencing."  However, as stated above, the circuit court was not required to explain its reasons for running his sentences consecutively.[32]  Corley acknowledges that it was not required to do so but urges that the absence of reasoning makes it difficult to determine whether the circuit court was motivated by an impermissible or illicit motive and allows discriminatory sentencing decisions to be "hidden from view" and violates due-process rights.  Corley advocates for requiring courts to explain the rationale behind sentencing decisions, urging this court to remand his case for resentencing for failure to do so.  Because Corley's argument is based on what he believes should be required of circuit courts when making sentencing decisions and does not allege an abuse of discretion, we affirm on this point.

Further, Corley does not allege that the circuit court imposed consecutive sentences due to any illegitimate reason.  We do not presume that the circuit court abused its discretion.[33]  Corley speculates that not requiring reasons for the imposition of consecutive or concurrent sentences invites circuit courts to impose sentences for improper motives.  This speculation does not satisfy Corley's heavy burden of proving the court failed to exercise its discretion with regard to his sentences.  Moreover, the record demonstrates that the circuit court recognized the sentencing decision was a

[31]*Id.*

[32]*See Pyle*, *supra*.
[33]*Doster*, *supra*.

11

"big deal" and took the matter under advisement. The following day, the court announced its decision to impose Corley's sentences consecutively.[34]

For the reasons stated herein, we affirm Corley's convictions and the resulting prison sentences, to be served consecutively.

Affirmed.

KLAPPENBACH and VAUGHT, JJ., agree.

*Terrence Cain*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *David L. Eanes, Jr.*, Ass't Att'y Gen., for appellee.

---

[34]Ark. Code Ann. § 5-4-702(d) provides that "[t]he enhanced portion of the sentence is consecutive to any other sentence imposed." However, the circuit court had the discretion to order Corley's sentences for second-degree domestic battering and aggravated assault to run either concurrently or consecutively.