ROBIN F. WYNNE, Associate Justice I;Heather Swain appeals from her convictions on charges of accomplice to capital murder and accomplice to kidnapping, which resulted in a sentence of life imprisonment. She argues on appeal that the introduction of certain portions of her interview with police violated her rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution. We affirm. Appellant was charged with accomplice to capital murder, accomplice to kidnapping, tampering with physical evidence, and engaging in violent criminal-group activity. Prior to trial, she filed a number of motions seeking to have certain evidence suppressed. Among these was a motion to suppress portions of her interview with police on the grounds that statements by officers during the interview constituted inadmissible hearsay and violated her rights under the Confrontation Clause. Included in these statements by police was information that the Rpolice claimed had been given to them by appellant’s co-defendants, James Patton, Anthony Alan Swinford, and Timothy Swinford. All of appellant’s pretrial motions were denied by the trial court. At trial, Washington County Sheriffs Deputy Ryan Melancon testified that on December 27, 2012, at approximately 8:30 a.m., he responded to a welfare-check call on Four Corner Road in the far southwest portion of Washington County. As he pulled up, he could see a body on the ground with no shirt, blue jeans, and tennis shoes. Deputy Melancon testified that it was apparent as soon as he touched the body with a gloved hand that the person was deceased. The deceased was subsequently identified as Ronnie Bradley. It was determined that Mr. Bradley had been killed by a combination of blunt-force trauma and strangulation. The State contended at trial that appellant was an accomplice to the kidnapping and murder of Ronnie Bradley because she went with the co-defendants to pick up Ronnie at his home and subsequently drove her vehicle while James Patton, Tim Swinford, and Alan Swinford beat Ronnie both inside and outside the vehicle and choked him with one of the vehicle’s seat-belts. The State produced evidence that blood was found in appellant’s vehicle. The State also produced evidence that appellant was seen in her vehicle, along with Ronnie and her co-defendants, between the hours of 12:00 p.m. and 6:00 p.m. on December 26, 2012. Detective Bret Hagan testified that he conducted a two-and-a-half-hour interview with appellant on Deeémber 27-28, 2012. Over appellant’s objection, the recording of the | ..¡interview was played for the jury. A transcript of the interview was also entered into evidence over appellant’s objection. Before the recording was played, the trial court admonished the jury, stating, Now, ladies and gentlemen, members of the jury, the State is about to play this interview and you’re about to see the interview with the Defendant, Ms. Swain. A number of the questions asked by the officers conducting the in- ■ terview are basically hearsay[1] and you’re therefore not to consider those questions as the truth of the matter asserted, only as a means of interrogating a witness, more particularly Ms. Swain. During the interview, appellant initially told' the detectives that there had been an incident during which Alan and Tim Swin-ford had punched Ronnie while they were all in her vehicle. She then maintained that Ronnie got into the Swinfords’ truck while Alan and Tim came into her home for a short time and that Ronnie, Alan, and Tim left together at about 5:00 p.m. When the detectives confronted her with information from the co-defendants and other witnesses, her subsequent statements changed and included more detail, including indications that Ronnie had begged her to go home, that she wanted to go home but was afraid of Alan and Tim, who refused to allow her to take him home, and that James had tried to stop Alan and Tim and that they had attacked James. She stated that Alan and Tim had “put [Ronnie] out on the road” and promised to go back and get him as opposed to leaving her house with Ronnie in their truck, as she had stated earlier. She also initially | Jndicated that Alan was standing next to her when she went to Ronnie’s door to pick him up, but then later stated that he was probably not standing where Ronnie could have seen him. After the State rested, appellant called Alan Swinford to testify. Ronnie had been in a relationship with Alan’s wife, Amy, at the time of her death, apparently from a drug overdose, earlier in December 2012, and Alan blamed Ronnie for Amy’s death. Alan testified that he and Tim would not let appellant take Ronnie Bradley home even though he asked to go home. He stated that he was not going to let anyone get between him and Ronnie “without a fight.” According to Alan, appellant did most of the driving. Alan testified that while appellant went to Ronnie’s door, he was in the cargo area of the Suburban with his head against the back window. At one point, while James was driving the vehicle, appellant began yelling at Ronnie about Amy’s death. Alan testified that once the beating of Ronnie started, he did most of it, and James struck Ronnie as well. According to Alan, appellant slapped Ronnie while Ronnie was being beaten. Appellant made statements to Ronnie that she knew would further infuriate Alan. She also pulled over.while Ronnie was being beaten, allowed Ronnie to be dragged from the vehicle and beaten, and began driving again after Ronnie had been put back in the vehicle. Alan testified that he did not remember telling appellant that she could not take Ronnie home. Alan also denied telling appellant not to call the police. Alan later contradicted his earlier statement by testifying that he would not let appellant take Ronnie home and indicating that James had tried to stop the beating. Alan then later said that Tim was the only one who said to stop the beating and that he was not sure whether appellant or James ever told him to stop. |sThe jury convicted appellant as an accomplice to both capital murder and kidnapping. The trial court sentenced appellant to life imprisonment without parole on the capital-murder charge and 300 months’ imprisonment on the kidnapping charge, with the sentences to run concurrently. This appeal followed. Appellant’s argument on appeal is that the introduction of the video and transcript of her interview with police violated her right to confront witnesses against her under the Confrontation Clause of the Sixth Amendment to the United States Constitution because the police repeated statements made by co-defendants who did not testify at trial. As this raises an issue of constitutional interpretation, our review is de novo. Vankirk v. State, 2011 Ark. 428, 385 S.W.3d 144. We must determine whether the statements objected to by appellant are hearsay, as the admission of nonhearsay raises no confrontation-clause concerns. Vidos v. State, 367 Ark. 296, 310, 239 S.W.3d 467, 478 (2006). “Hearsay” is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Ark. R. Evid. 801(c) (2014). The State contends that the references by the detectives during appellant’s interview to statemehts made by the co-defendants are not hearsay because they were not offered in evidence to prove the truth of the matters asserted in the statements. We agree. As noted above, appellant’s responses to the inquiries by the detectives changed as she was confronted with their knowledge of the events leading to Ronnie’s death. It is clear that the purpose of introducing the interview was not to attempt to prove the veracity of the ^statements attributed to the nontestifying co-defendants[2] and witnesses. Instead, the purpose was to give context to appellant’s responses, make those responses intelligible, and demonstrate how appellant’s responses changed as she was confronted with what the detectives had already been told. In addition, the trial court specifically admonished the jury not to consider the statements as evidence of the truth of the matters asserted but as an interrogation technique. We presume that a jury follows the trial court’s instructions. See Kelly v. State, 350 Ark. 238, 85 S.W.3d 893 (2002). Appellant argues that two precedents from the United States Supreme Court require reversal in this case. Her reliance on those precedents is misplaced. In Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), the Court held that the defendant’s confrontation rights were violated when the prosecution read a witness’s confession, which implicated the defendant, into the record after the witness had claimed Fifth Amendment privilege. In Bruton v. United, States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the trial court allowed the prosecution to introduce the confession of a co-defendant at a joint trial, with an instruction for the jury to consider the confession as evidence against the confessing co-defendant but not as evidence against Bruton. The United States Supreme Court held that. the defendant’s confrontation rights were violated, notwithstanding the instruction. The crucial distinction between Douglas, Bruton, and the case at bar is that, in the former cases, the disputed statements were clearly out-of-court statements |7offered to prove the truth of the matters asserted therein. In other words, those statements were undoubtedly hearsay. In Douglas, the prosecution was attempting to use the witness’s statements to prove the truth of the matters asserted because it could not elicit the same testimony from him at trial. In Bruton, the prosecution introduced the co-defendant’s confession to prove the truth of his statements because the jury was considering the co-defendant’s guilt as well as the defendant’s. Here, the State, as explained above, did not introduce the detectives’ references to the co-defendants’ statements as evidence of the truth of the matters asserted in those statements. Also, in Bruton, the admonition by the trial court was deemed insufficient because the State was attempting to prove the truth of the matters asserted in the statement against one of the defendants, leaving the jury with an extremely difficult task in mentally separating the two defendants with regard to the hearsay statements. Despite appellant’s efforts to equate the situation in this case with that presented in Bruton, the circumstances presented in the two cases are materially different, because the State was not presenting the statements against appellant as evidence of the truth of the matters asserted in the statements, and appellant was the sole defendant on trial. Thus, the mental contortions required of the jury in Bruton were not required here. The holdings in Douglas and Bruton do not require reversal in this case. Because the detectives’ references to the co-defendants’ statements were not introduced into evidence to prove the truth of the matters asserted, they are not hearsay. Because the statements are not hearsay, appellant’s confrontation-clause argument has no | smerit.[3] Decay v. State, 2009 Ark. 566, 352 S.W.3d 319. This reasoning is in line with decisions from other state appellate courts and federal courts of appeal. The Eighth Circuit Court of Appeals has held that out-of-court statements that merely provided context for other admissible statements made by a defendant and his coconspirators that were not offered for their truth were not hearsay. United States v. Crippen, 627 F.3d 1056 (8th Cir.2010). In State v. Tovar, 605 N.W.2d 717 (Minn.2000), the court held that statements by police during a taped interview of the defendant about what non-testifying co-defendants had told them were not inadmissible hearsay because they were not offered for the truth of the matter asserted but rather to give context to the defendant’s responses and admissions. Likewise, in McWatters v. State, 36 So.3d 613 (Fla.2010), the court held that statements by officers during an interview about what nontestifying witnesses had told them were not offered for the truth of the matters asserted, noting that a limiting instruction had been given. Also, the Indiana Supreme Court has held that statements and questions by police during an interview were not inadmissible hearsay because they were made to elicit responses from the defendant, and were not offered as proof of the facts asserted therein, also noting that a limiting instruction was given by the trial court. Strong v. State, 538 N.E.2d 924 (Ind.1989). | ^Appellant also argues that an opinion by this court affirming the trial court could be subject to being abused by police and the State in future cases. We wish to make it abundantly clear that our holding in this case is limited to the specific facts presented. Similar allegations of confrontation-clause violations that may be made in future cases are to be addressed by our circuit courts, and will be decided by this court and our court of appeals if appealed, in accordance with the applicable law and the specific facts presented in those cases. The record has been reviewed pursuant to Arkansas Supreme Court Rule 4 — 3(i), and no reversible error has been found. Affirmed. Baker and Hart, JJ., dissent. . Despite the trial court’s reference to the questions as "hearsay,” its later reference to not considering the questions for the truth of the matter asserted indicates that it was using the term hearsay in its colloquial sense and not according to its legal definition, as hearsay, by definition, must be offered in evidence to prove the truth of the matter asserted. Ark. R. Evid. 801(c) (2014). . As Alan Swinford testified at trial, any statements attributed to him would not implicate the Confrontation Clause, because he was subject to examination regarding those statements at trial. Crawford v. Washington, 541 U.S. 36, 59 n. 9, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Appellant conceded at oral argument before this court that any statements attributed to Alan would not raise confrontation-clause concerns. . The dissent alleges that we have failed “to ' take into account” whether a statement by James was made for the truth of the matter asserted when it was made by James to the officer and that we have failed to acknowledge a second layer of hearsay. While we in no way concede that this assertion has merit, appellant never argued to this court, either in her brief or at oral argument, that the statements constituted inadmissible hearsay on this basis. This court does not research or develop arguments for appellants. Eaistin v. State, 2010 Ark. 275, 2010 WL 2210924.