Cite as 2023 Ark. 139

# SUPREME COURT OF ARKANSAS
**No.** CR–23–22

| | |
|---|---|
| | **Opinion Delivered:** October 12, 2023 |
| WAYNE MADOLE | APPEAL FROM THE FRANKLIN COUNTY CIRCUIT COURT [NO. 24OCR-20-267] |
| APPELLANT | |
| V. | HONORABLE JAMES DUNHAM, JUDGE |
| STATE OF ARKANSAS | |
| | AFFIRMED; MOTION TO WITHDRAW GRANTED. |
| APPELLEE | |

**BARBARA W. WEBB, Justice**

A Franklin County jury convicted Wayne Madole of aggravated residential burglary, attempted first-degree murder, first-degree battery, residential burglary, breaking or entering, theft of a firearm, and second-degree criminal impersonation. As a habitual offender, Madole received a sentence of life imprisonment for aggravated residential burglary, and concurrent sentences of 720 months for attempted first-degree murder; 480 months for residential burglary; 480 months for first-degree battery; 180 months for breaking or entering; 180 months for theft of a firearm; and 12 months for second-degree criminal impersonation. The convictions for aggravated residential burglary, attempted first-degree murder, and first-degree battery were each enhanced with consecutive 180-month sentences.

Pursuant to *Anders v. California*, 386 U.S. 738 (1967), and Arkansas Supreme Court Rule 4–3(b) (2023), Madole's attorney, Ernie Witt, has filed a motion to withdraw as

counsel and a no-merit brief stating that any issues raised on appeal would be "wholly frivolous." In accordance with Arkansas Supreme Court Rule 4-3(b)(2), Madole was furnished with a copy of his attorney's brief and informed that he had the right to submit pro se points for consideration by the court. Madole has availed himself of that right.

Having reviewed the record and briefs, we affirm Madole's convictions and sentence and grant counsel's motion to withdraw.

## I. *Facts and Analysis*

Madole was charged as a habitual offender with the following crimes: aggravated residential burglary, attempted first-degree murder, residential burglary, first-degree battery, theft of property, breaking or entering; and second-degree criminal impersonation. In addition, Madole was charged with a firearm enhancement for the aggravated-residential-burglary, attempted first-degree murder, and first-degree-battery counts.

It is noteworthy that trial counsel stated in the opening statement that his client "did in fact commit some of the crimes which he is charged with," and he told the jury that its function was going to be, essentially, "what punishment is appropriate for him." At trial, Louise McKinney testified that when she and her husband, Malcolm, returned to their home after checking on cattle at their farm, they noticed a red pickup truck parked in their carport. The door to their residence had been kicked in, the house had been ransacked, and they discovered a .380-caliber pistol was missing. Malcolm called the police. Louise also testified that her automobile had been ransacked. She stated that she remained at the house while her husband went to a rent house on the property occupied by Dana Deen. Soon after, law enforcement officers arrived. Louise further stated that Malcolm returned with Deen, who

2

had suffered a gunshot wound. Louise's testimony was supported by security video that was played for the jury while she testified.

Malcolm testified next, similarly describing the situation recounted by Louise. He further testified about accompanying law enforcement to Deen's residence. He stated that her door was locked, but after he knocked, she opened the door and ran to him. He noticed Deen had been shot, and at the behest of police, he took her up to his residence. He observed that Deen had been shot in the neck. He applied towels to her wounds until the paramedics took over.

Tyler Williams testified that on the night in question, he was a trooper with the Arkansas State Police. He stated that he, Malcolm, and Franklin County Deputy Marvin Whorton went to Deen's residence to check for the perpetrators who had burglarized the McKinney residence. Malcolm and Marvin knocked on Deen's door, at first getting no answer. However, he heard the door unlatch and Deen ran out, covered in blood. He and Malcolm helped Deen to the McKinney residence where the McKinneys rendered first aid. When medical personnel arrived, he accompanied other law enforcement officers back to Deen's residence. Officers made contact with the suspects inside the house by way of a PA system in one of the patrol cars. The man, whom Trooper Williams later identified as Madole, and his female companion were directed to come out of the house, walking backward. While doing so, both suspects told the officers that they were with "FBI special forces." Once Madole had backed up into an open area, he refused to comply with the officers' additional commands, and he had to be physically restrained by them. He continued to tell officers that he was with law enforcement.

Taylor Molton, one of the other Franklin County deputies who had responded to the emergency call, sponsored a body-cam recording of the event that was made that night. The body-cam recording was admitted into evidence without objection. The State, however, did offer a transcript of the body-cam audio. Madole's trial counsel objected to the admission of the transcript, the only evidentiary objection in the record. This objection was overruled by the circuit court, which found that "the transcript is capable of being used for purposes of helping the jury to follow along on State's Exhibit Number 10." The circuit court further reasoned that as the video, the exhibit itself, had been admitted, so had the transcript. Nonetheless, the court cautioned the jury that the transcript "is an aid for you to try to understand and hear and understand [sic] what's being said on State's Exhibit 10, the video. If there – if you find that there is any discrepancy at all between what you actually hear on 10 and what is written on 10A, then you'll go with Exhibit 10, because it's the actual exhibit." The court further cautioned that "10A is just . . . an assistance device for you to try and follow along as you're viewing State's Exhibit Number 10." When asked if they understood, the jury indicated affirmatively that they did. Two other transcripts related to other body-cam videos—exhibits 10B and 10C—were also admitted with the same limitation, although no specific objection was made by counsel.

Paramedic Jerry Parrish testified next. He confirmed Deen's injuries, describing them as "a penetrating wound in her neck and on her right shoulder." He stated that she required "level one" trauma care and that she was airlifted to Little Rock. Levi Hammon, the flight paramedic, confirmed Deen's injuries.

Franklin County Deputy Curtis Bishop testified that he processed the crime scene,

and he sponsored pictures that he had taken that night. The pictures were admitted without objection. He also sponsored into evidence the handgun that Madole had taken from the McKinney residence.

The State concluded its case by calling Dana Deen, who testified that she was the victim of a burglary in the home she rented from the McKinneys. She described how Madole had used a firearm to threaten her: "[H]e put a gun in my face and yelled for me to get on the ground." She stated that Madole kept yelling at her, asking her where the drugs were. Deen heard him smash open a locked bedroom door and observed Madole's female accomplice enter that room. Meanwhile, he forced her to go into her bedroom, demanding that she give him drugs. At Madole's insistence, she opened drawers and the closet. He called his accomplice, giving her an official-sounding title like "captain," "investigator," or "lieutenant." Deen recalled that the accomplice was also armed with a handgun and that Madole told her to put the gun on Deen and to shoot her if she moved. After failing to find drugs, Madole forced Deen back into the living room. He closed and locked the front door. Madole pointed his gun at her and pulled the trigger. It failed to fire. It misfired a second time, and he then switched guns with his accomplice and pulled the trigger again. This time, the gun fired, and Deen felt the bullet hit her neck. She dropped to the ground where she lay until she heard someone trying to open the door. She jumped up and unlocked the door and "ran straight into a police officer's arms." She told him that she had been shot and that two armed intruders were still in the house. Deen confirmed that Malcolm McKinney was with the officer and that they took her to the McKinney residence where she received first aid. Photographs of Deen's wounds were admitted into evidence.

Before resting, the State asked the circuit court to take judicial notice that theft of property is an offense punishable by imprisonment. Madole's trial counsel did not object.

Madole's trial counsel largely eschewed making a directed-verdict motion. He did, however, assert that no evidence had been offered as to the value of any property stolen. The circuit court denied that motion because the stolen item was a firearm and noted that the evidence that the stolen item was a firearm qualified the theft as a felony.

As stated previously, only a single evidentiary objection was made. Although trial counsel did not specify the basis for the objection to the use of the transcript, similar transcripts have been allowed in other cases. *See, e.g.*, *Swain v. State*, 2015 Ark. 132, 459 S.W.3d 283. Furthermore, the circuit court was careful to instruct the jury on the limits of their use. Accordingly, we agree that challenging that objection on appeal would be wholly frivolous.

## II. *Pro Se Points*

Under the *Anders* formulation, a pro se defendant may file points on appeal even though his trial counsel has opined that the case is without merit. *Anders*, *supra*. However, we will not consider the merits of an issue that has not been raised and ruled on in the trial court. *Davis v. State*, 368 Ark. 401, 246 S.W.3d 862 (2007).

### A. Privilege Against Self-Incrimination

Madole asserts that his trial counsel violated his right against self-incrimination by conceding guilt in opening statement. This issue was not preserved by a contemporaneous objection.

## B. Prosecutorial Misconduct

Madole claims that the prosecution "failed to disclose exculpatory evidence," referring to his codefendant's guilty plea. We hold that this point is wholly frivolous because Madole's codefendant pleaded guilty before his trial, and the plea was public record and thus available to him.

## C. Double Jeopardy

Madole asserts that his convictions violated double jeopardy. However, this issue is not preserved for appellate review.

## D. Denial of Fair and Impartial Trial

Madole's contention that he did not receive a fair and impartial trial due to the ineffective assistance of his defense counsel is not preserved for appellate review because there was no objection made at trial.

## E. Denial of Speedy Trial

Madole's assertion that he was denied a speedy trial was not challenged in the trial court and is thus not preserved for appellate review.

## F. Mental Incompetency

Madole's contention that his trial counsel was constitutionally ineffective for failing to investigate his mental-health condition is belied by the record. Madole did not challenge the effectiveness of his counsel at trial; therefore, this issue is not preserved for appellate review.

## G. Illegal Sentence

Madole's contention that he received an illegal sentence because his convictions were

improperly enhanced is not preserved for appellate review.

### III. *Rule 4-3(a) Review*

Because Madole received a sentence of life imprisonment, the record has been reviewed for all errors prejudicial to him, as required by Arkansas Supreme Court Rule 4–3(a). No reversible error was found.

Affirmed; motion to withdraw granted.

*Witt Law Firm, P.C.*, by: *Ernie Witt*, for appellant.

*Tim Griffin*, Att'y Gen., by:  *Kent G. Holt*, Ass't Att'y Gen., for appellee.